Argued and submitted May 13, 1992, affirmed on petition and on cross-petition
February 3, 1993

# LANE COUNTY PUBLIC WORKS ASSOCIATION LOCAL 626
## and Theodore Bushek,
*Respondents - Cross-Petitioners,*

*v.*

# LANE COUNTY,
*Petitioner - Cross-Respondent.*

## (UP-36-90; CA A71642)
846 P2d 414

David B. Williams, Assistant County Counsel, Eugene, argued the cause for petitioner - cross-respondent. With him on the briefs was Lane County Office of Legal Counsel, Eugene.

Gary K. Jensen, Eugene, argued the cause for respondents - cross-petitioners. With him on the brief was Jay H. Safley, Eugene.

Before Rossman, Presiding Judge, and De Muniz and Leeson,* Judges.

De MUNIZ, J.

---

* Leeson, J., *vice* Buttler, J., retired.

## De MUNIZ, J.

Bushek, Davis and Reis applied for the Lane County senior parks maintenance job. After an interview with each applicant, the county selected Davis for the job. Complainants, Bushek and Lane County Public Works Association, filed a complaint with the Employment Relations Board (ERB) alleging that the county had committed unfair labor practices by hiring Davis, by reprimanding Bushek after the hiring decision was made and by refusing to provide information that complainants had requested about the hiring process.[1] They sought an order directing the county to give Bushek the job and imposing a civil penalty against the county.

ERB concluded that the county had violated ORS 243.672(1)(a) by denying Bushek the job because of his union activity, and it ordered the county to give him the job. ERB dismissed the claim that the county had committed an unfair labor practice by failing to furnish the information that complainants had requested about the hiring process. It also denied their request for a civil penalty. The county seeks review of the order directing it to give Bushek the job.[2]

---

[1] ORS 243.672(1) provides, in part:

"It is an unfair labor practice for a public employer or its designated representative to do any of the following:

"(a) Interfere with, restrain or coerce employees in or because of the exercise of rights guaranteed in ORS 243.662.

"* * * * *

"(c) Discriminate in regard to hiring, tenure or any terms or condition of employment for the purpose of encouraging or discouraging membership in an employee organization. * * *

"(d) Discharge or otherwise discriminate against an employee because the employee has [filed an unfair labor practice complaint].

"(e) Refuse to bargain collectively in good faith with the exclusive representative."

ORS 243.662 provides:

"Public employees have the right to form, join and participate in the activities of labor organizations of their own choosing for the purpose of representation and collective bargaining with their public employer on matters concerning employment relations."

[2] ORS 243.676(2) provides, in part:

"[If] the board finds that any person named in the complaint has engaged in [any] unfair labor practice charged in the complaint, the board shall:

"* * * * *

Complainants seek review of the denial of their request for a civil penalty and the dismissal of their claim based on the county's failure to produce the information about the hiring process. We affirm.

We take the facts from ERB's findings. Bushek began working for the Lane County Department of Public Works in 1978. In 1982, he began working in the department's road maintenance unit and became the union's president. His job consisted of maintaining the grounds around the department's headquarters building and its central maintenance yard. In 1984, that duty was reassigned to the senior parks maintenance position, and Bushek began working with construction and road repair equipment. Morris also worked in the road maintenance unit. Both he and Bushek reported to Puett, the department's zone supervisor. In 1988, Morris became the union's president, and Bushek filled the union's newly created steward-at-large position. Bushek continued to handle grievances and arbitrations for the union, as he had done when he was president.

In August 1989, the senior parks maintenance position became vacant. Morris and Bushek applied. Van Elsberg, the road maintenance manager, interviewed both of them. Van Elsberg's previous experience with Bushek was almost exclusively related to union-management matters.[3] Van Elsberg decided to open the job to any member of the bargaining unit, so that he could consider a larger pool of applicants. He told Morris that "he needed to work closely with the person in the parks position and he felt that he could not work closely with Bushek."

Before Van Elsberg listed the job, he asked Davis to consider applying for it. At that time, Davis was working in the sign shop of the traffic planning and engineering unit. Bushek, Davis and Reis applied. Van Elsberg, Puett and

---

"(c) Take such affirmative action, including but not limited to the reinstatement of employees with or without back pay, as necessary to effectuate the purposes of [ORS 243.650-ORS 243.782]."

The county does not contend that ERB lacks authority to order it to give Bushek the job, and we express no opinion on that.

[3] Among those matters was an unfair labor practice charge that Bushek had filed against Van Elsberg. That charge was ultimately withdrawn.

Putschler interviewed them. Puett preferred Bushek. Van Elsberg's discomfort about Bushek led him to conclude that Davis was the most suitable candidate. Putschler told two employees that Bushek had done well in the interview, but that Davis had not. However, he considered factors other than the interview, and he rated the two evenly. He decided to concur with Van Elsberg's recommendation that Davis be offered the job.

After Bushek found out that Davis had been selected for the job, he approached Davis to discuss the decision. Bushek told Davis that he should turn down the job, because Bushek felt that he was better qualified. Bushek was neither threatening nor coercive. During the conversation, Reis appeared. Bushek asked Reis if he would like Bushek to pursue a grievance regarding Davis' selection. The county found out about the discussion between Bushek and Davis, and it issued a written reprimand to Bushek for violating a county work rule that prohibited intimidation, coercion or threatening other employees.

■ The union filed a grievance against the county. It contended that the county did not have cause to discipline Bushek. The matter was referred to arbitration. The union asked the county to provide Davis' application for the senior parks maintenance job, his personnel file, copies of interview notes, information regarding changes in interview and evaluation criteria and any Lane County document that defined the terms "more suited" or "more suited for a position." The county denied the request on the grounds that Davis' application and file were confidential and that the interview notes were privileged. The county also stated that there had not been any "changes" in the selection criteria, because this was a new job, and the county was unaware of any formal definition of the term "more suited." The arbitrator concluded that Bushek had not violated the work rule that prohibited intimidation, and he set aside the county's reprimand of Bushek.

In its order, ERB concluded:

"The [union] established a *prima facie* case. It showed extensive union activity by Bushek * * *. The attending circumstances consist of Van Elsberg's decision to interview the [applicants] rather than leave the matter to the foreman, his denial of a transfer and his decision to post the position,

his discussion with McCawley in personnel regarding Bushek's eligibility for a promotion which preceded Bushek initially being declared ineligible for the position, his solicitation of Davis to apply for the job, and his selection of Davis over the wishes of foreman Puett, who strongly preferred Bushek.

"*The [union] further proved that Bushek's union activity played a role in Van Elsberg's decision * * *.*

"When it is proven that an employee's [union] activity played a role in an employer's action adverse to the employee, *the burden of persuasion shifts to the employer.*" (Emphasis supplied; footnote omitted.)

The county contends that ERB impermissibly shifted the burden of persuasion to the county, by requiring it to prove that it had legitimate reasons for hiring Davis and that it would have made the same decision without considering Bushek's union activities. The difficulty with ERB's order stems from its use of the phrases "*prima facie* case" and "the burden of persuasion shifts." When viewed in isolation, those phrases can be read to suggest that a presumption in favor of the complainants arises if the complainants produce sufficient evidence to allow a finding that Bushek's union activities played a role in the county's decision not to hire him. When viewed as a whole, however, ERB's order shows that it properly allocated to the county the burden of proving an affirmative defense.

The Supreme Court reviewed a procedurally identical case in *City of Portland v. Bureau of Labor and Ind.*, 298 Or 104, 690 P2d 475 (1984). In that case, the complainant alleged that her employer, the City of Portland, paid her a lower salary than it paid to male employees who did the same work. She contended that her lower rate of pay was the result of sexual discrimination by the city. The city denied that it had discriminated against her, and it asserted several affirmative defenses to explain the disparate pay. In reviewing the Bureau of Labor and Industry's decision in favor of the complainant, the court observed:

"One who merely establishes a *prima facie* case and rests does not necessarily win even if the opponent adduces no evidence whatsoever and merely relies on a denial of alleged wrongdoing. The trier of fact may, in such instance, decline to draw the permissible inference necessary to establish

liability. Indeed, the trier of fact may disbelieve the evidence adduced to establish the fact from which the inferred fact is to be drawn. In either case, the party with the burden of persuasion would lose. On the other hand, were the trier of fact to believe the evidence adduced to prove the primary fact and then draw a permissible inference that establishes the charge, an employer who rests without adducing evidence will lose.

"We address the matter as it has been presented to us. The Commissioner did draw the permissible inference that [the complainant] was paid less because of her sex than were the [male] police officers who were performing substantially the same work. We proceed to examine the City's affirmative defenses." 298 Or at 114. (Footnote omitted.)

For purposes of our review, there is no meaningful distinction between *City of Portland v. Bureau of Labor and Ind., supra,* and this case. Complainants presented sufficient evidence to support Bushek's claim, and that allowed ERB to infer that the county's unlawful motive was a material factor in its decision not to hire Bushek. However, ERB was not required to make that inference. Consequently, there was no shifting of the burden of persuasion on that issue. Nonetheless, ERB's order indicates that it *was* persuaded by complainants' *prima facie* showing, because it concluded that they had *"proved* that Bushek's union activity played a role" in the county's hiring decision. (Emphasis supplied.) ERB drew the "permissible inference that establishe[d] the charge." 298 Or at 115. ERB's finding that the county's unlawful motive played a part in its hiring decision is supported by substantial evidence, and we may not disturb it. ORS 183.482(8)(c).

The county's contention that it would have hired Davis despite its unlawful motive amounts to an affirmative defense. Because it is an affirmative defense, the county had the burden of proving it. ORS 183.450(2), (5); *Rencken v. Young,* 300 Or 352, 364, 711 P2d 954 (1985). ERB did not impermissibly shift the burden of production or persuasion to the county—the county always had the burden on affirmative defenses. ERB's order and *City of Portland v. Bureau of Labor and Ind., supra,* simply reflect that it would have been unnecessary for the county to carry that burden if ERB had not been persuaded by complainants' *prima facie* case.

■     In their first assignment of error in their cross-petition, complainants contend that ERB erred by dismissing their claim that the county violated ORS 243.672(1)(e) when it refused to provide the information that complainants had requested about the hiring process. That request occurred in the context of a grievance proceeding. The issue in that proceeding was whether the county had violated the contract by reprimanding Bushek for confronting Davis. Complainants did not show that documents relating to the hiring process were relevant to any issue in that proceeding. The county did not violate that statute when it failed to furnish the requested documents.

■     Next, complainants contend that ERB erred by concluding that the county did not commit an unfair labor practice when it reprimanded Bushek. They contend that there is substantial evidence to support a finding that the county reprimanded Bushek for engaging in union activities. ERB's finding that the county did not reprimand Bushek because of his union activity is supported by substantial evidence. ORS 183.482(8)(c). The fact that the evidence could support the opposite finding does not mean that ERB was compelled to make that finding. We may not substitute our judgment for ERB's on a factual issue. ORS 183.482(7).

■■     Finally, complainants contend that ERB erred by not imposing a civil penalty against the county for denying Bushek the senior parks maintenance job. ERB *"may award a civil penalty* to any person as a result of an unfair labor practice complaint hearing." ORS 243.676(4). (Emphasis supplied.) By using the word "may" in that statute, the legislature intended that ERB have discretion in deciding whether to impose a civil penalty. *See In re Banks/Thompson/ Sims,* 284 Or 691, 693, 588 P2d 34 (1978); *State v. Harding,* 116 Or App 29, 32 n 4, 840 P2d 113 (1992). ERB explained that it would not impose a civil penalty against the county, because the county's decision was based "on a novel theory about basing personnel decisions on personal interactions in union-management meetings." ERB did not abuse its discretion.

Affirmed on petition and on cross-petition.