62 F.3d 1227
 68 Fair Empl.Prac.Cas. (BNA) 986,
66 Empl. Prac. Dec. P 43,665,
95 Cal. Daily Op. Serv. 6314,
95 Daily Journal D.A.R. 10,772
Donald E. MESSICK, Plaintiff-Appellant,
v.
HORIZON INDUSTRIES INC., a Georgia corporation; Mohawk
Carpet Corporation, a Delaware Corporation,
Defendants-Appellees.
 No. 94-35025.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted July 10, 1995.
Decided Aug. 10, 1995.
 
 1
 Donald B. Potter, Portland, OR, for plaintiff-appellant.
 
 
 2
 Rosemary C. Lumpkins (argued), Edward Katze, Costangy, Brooks & Smith, Atlanta, GA, for defendants-appellees.
 
 
 3
 John V. Acosta, Maryann Yelnosky-Smith, Stoel, Rives, Boley, Jones & Grey, Portland, OR, for defendants-appellees.
 
 
 4
 Appeal from the United States District Court for the District of Oregon.
 
 
 5
 Before: GOODWIN and HUG, Circuit Judges, and SCHWARZER, District Judge.*
 
 WILLIAM W. SCHWARZER, District Judge:
 
 6
 Procedural status. Donald Messick was terminated from his employment by Horizon Industries in 1992. Horizon has since been acquired by defendant Mohawk Carpet Corporation. Messick brought this action charging violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. Sec. 626(b) (1988). He also alleged as supplemental claims violation of the Oregon Age Discrimination Act, Or.Rev.Stat. Sec. 659.030(1)(a) (1991), breach of contract and wrongful discharge. The District Court granted Mohawk's motion for summary judgment and Messick appealed. The District Court had jurisdiction under 28 U.S.C. Secs. 1331 and 1367. We have appellate jurisdiction under 28 U.S.C. Sec. 1291.
 
 
 7
 Scope of Review. We review a grant of summary judgment de novo. Bonner v. Lewis, 857 F.2d 559, 561 (9th Cir.1988). In doing so "[w]e do not weigh the evidence or determine the truth of the matter but only determine whether there is a genuine issue for trial." Wallis v. J.R. Simplot Co., 26 F.3d 885, 888 (9th Cir.1994).
 
 
 8
 The ADEA Claim. Messick was born in 1929. In 1980, he was hired by Horizon's predecessor, Mohawk, as a carpet salesman with territory in Oregon and Washington. In 1986, he left Mohawk to work for Horizon. Messick worked for Horizon thereafter until Horizon terminated his employment on January 28, 1992. Mohawk now contends that the reason for Messick's termination was his failure to perform his job in a satisfactory manner. Messick claims that he was subjected to age discrimination in connection with the division of his territory, the assignment of sales quotas, and his termination. In view of the disposition of this appeal, it is necessary only to address the termination issue.
 
 
 9
 To maintain an age discrimination claim, a plaintiff must produce enough evidence to establish a prima facie case of discrimination which, for purposes of summary judgment, means enough evidence to permit a trier of fact to infer the fact at issue. Rose v. Wells Fargo & Co., 902 F.2d 1417, 1420 (9th Cir.1990). The elements of a prima facie case are that plaintiff: (1) was a member of the protected class (age 40 to 70); (2) was performing his job in a satisfactory manner; (3) was discharged; and (4) was replaced by a younger employee. Id. at 1421. Once plaintiff has established a prima facie case, the burden shifts to the employer to produce evidence of a legitimate, nondiscriminatory reason for the employment decision. Id. at 1420. If the employer carries the burden of production, plaintiff must prove by a preponderance of all the evidence that the reasons offered by the employer were pretextual. Id.
 
 
 10
 The court below correctly concluded that Messick established a prima facie case. Mohawk does not dispute that Messick was a member of the protected class and was discharged. Mohawk also does not dispute that Messick was replaced by a younger person; his territory was reassigned to a salesman in the Southern Oregon territory who was under 40 years of age. Mohawk does however dispute the second element, arguing that the undisputed evidence establishes that Messick was not performing his job according to Horizon's legitimate expectations. The requisite degree of proof to establish a prima facie case is minimal; plaintiff need only offer evidence giving rise to an inference of unlawful discrimination. Wallis, 26 F.3d at 889. As discussed below, there was sufficient evidence for the trier of fact to infer that Messick was performing satisfactorily.
 
 
 11
 The court below granted summary judgment on the ground that Messick "has not presented sufficient evidence from which a reasonable trier of fact could conclude that the reasons offered by defendants are a pretext for discrimination." (ER 177.) To determine whether the evidence presented raises a genuine issue of material fact, this court reviews the evidence--as must the trial court when faced with a motion for summary judgment--in the light most favorable to plaintiff. Rose, 902 F.2d at 1420.
 
 
 12
 According to Messick's supervisor, Larry Fields, the reasons for Messick's termination are accurately set forth in a memorandum given to Messick by Fields at the time of the termination. (ER 112, Ex. 34.) Those reasons, four in number, may be summarized as follows:
 
 
 13
 1) That Messick directed an "outburst" at Fields at a May 1991 sales meeting;
 
 
 14
 2) That Messick, dissatisfied with the 1992 budget Fields had proposed to him, submitted his own to the company without discussing it with Fields;
 
 
 15
 3) That Messick failed to "meet ... [Fields'] directives stated in ... [his] memo dated June 5, 1991"; and
 
 
 16
 4) That Messick disregarded Fields' instructions to change four of his accounts to FOB Kent Warehouse in Seattle.
 
 
 17
 The evidence with respect to each of the asserted grounds, viewed in the light most favorable to plaintiff, is discussed in the following paragraphs.
 
 
 18
 1) The outburst. Messick testified that at a sales meeting on May 13, 1991, attended by several other employees, Fields discussed with them the change of the shipping point for Portland accounts from FOB Mill to FOB Kent, Washington, the location of a warehouse used by Horizon. Messick explained that this could be done only if the company would equalize the freight, i.e. absorb most of the added freight cost. Fields interrupted Messick several times until Messick asked that Fields let him finish his statement. Messick testified that "Larry jumped up, hit the table with his fist, and said, 'I demand respect,' and stormed out of the room and was gone for probably 15 minutes. There was no outburst by me." (ER 41-42; see also Memorandum from Messick to Fields of 7/9/91, Ex. 21, p. 4.) One of the persons present, Dennis Vickers, submitted an affidavit corroborating Messick's version. (ER 159-60.)
 
 
 19
 2) The direct submission of the 1992 budget. Following instructions from Fields, Messick submitted a 1992 marketing plan (also referred to as a budget) for his territory directly to Bob Rawlins, Fields' superior. Messick's submission included both the plan Fields had prepared for him and his own revised plan. (ER 47-48.) Messick had initially prepared the plan to send to Fields, but Fields told him to send it directly to Rawlins. (ER 49-51, 54-55.) The revised plan called for a sales increase of 22 percent instead of 45 percent. (ER 52.) Messick did not consider it inappropriate for him to prepare a proposed budget. (ER 53.) Consistent with Messick's impression, Fields testified that the sales people were to use his sales projections "to assist them in estimating their fiscal '92 net sales goal" and that "[he] had instructed them to send them [the sales goals] directly to Bob Rawlins in Southern California because of the time frame involved here so that they could be typed." (ER 108.) Moreover, at least one other salesman, Vickrey, prepared and submitted his own plan, and was never criticized or reprimanded for doing so. (ER 161.)
 
 
 20
 3) The failure to meet the directives of June 5, 1991. Fields testified on deposition that the June 5 memorandum had more than one directive and that "the only one he [Messick] did not meet was that one concerning the change of the accounts from the primary mill to primarily [sic] Kent." (ER 112-13; see Ex. 23; see discussion in paragraph below.) He further testified that Messick was at 95% of his sales budget in the month of July and had thereby satisfied the sales goals set for him in the June 5 memorandum. (ER 114; see also ER 145.)
 
 
 21
 4) The failure to change four accounts to Kent Warehouse. In May 1991, Fields directed Messick to change his Portland Metro accounts from FOB Mill to FOB Kent Warehouse. (Ex. 23.) Messick persuaded all but four of his accounts to accept the change. (ER 147-48.) Fields testified that because selling out of Kent would increase the price to Messick's accounts in Portland by 18 cents a yard, (ER 93-94), he promised Messick that the company would absorb ten cents a yard; this was to be done by computer but "[t]here were difficulties in getting that done ... [the person] in charge of pricing ... could not seem to get their wires connected and get this thing properly done in the computer." (ER 96-97.) Also, because there was a possibility that changing the accounts so as to increase their price could result in a diminution of sales, (ER 163), and financial hardship to Messick and the company, Fields promised to speak personally to the four accounts with which Messick had a problem. (ER 104-06, 126-27.) Fields, however, failed to do so. (ER 44-45, 148-49.) Instead, he instructed the pricing department to change all Portland Metro accounts to FOB Kent, without making the pricing arrangement he had promised Messick. (ER 45, 106.) When Messick discovered that Fields had changed the accounts without the customers' approval, Messick repeatedly left messages for Fields in an effort to straighten out this problem. (ER 149.) However, Fields failed to respond to Messick's messages. Id. Therefore, to avoid disruption of his sales, Messick asked the pricing department not to change the four accounts. (ER 43-45.)
 
 
 22
 Thus, there was evidence on the basis of which the jury could have found the asserted reasons to be pretextual. Based on the evidence presented, the jury could have found: (1) that it was Fields rather than Messick who was guilty of an outburst; (2) that Messick's direct submission of a budget to Fields' supervisor was consistent with Fields' instructions and company practice; (3) that Messick substantially met the sales goals and all but one of the other directives set out in the June 5 memorandum; and (4) that Messick failed to meet the one directive to change the four accounts to FOB Kent only because Fields failed to secure the price arrangements and contact the customers as he promised, and Messick therefore had to maintain the FOB Mill status of the accounts to avoid losing them.
 
 
 23
 There was, in addition, evidence from which a trier of fact could have inferred an age-based motive on the part of Fields. About the time Fields became sales manager for the Pacific Northwest and Messick's supervisor, (ER 73), Messick had received an award as one of defendant's top ten salespeople (ER 142, 152-53). Within two years, Fields split Messick's territory, over his objections, and gave the southern portion to Jerry Miller, a 32 year old, newly-hired salesman. (ER 39-40, 68, 76-78.) When the company shortly thereafter switched its salespeople from salary to commission, both Miller and Messick expressed concerns that they could not make it in the split territory. (ER 80-82.) In response, Fields transferred additional territory to Miller but not to Messick. (ER 82-83.) After Messick was terminated, the split territories were reunited and assigned to Miller. Messick also presented evidence that Fields repeatedly commented to Messick, coworkers, and customers about Messick's age. (ER 140-41, 144, 161.) For example, Messick recalled that, during one call on a customer, Fields asked the customer, "Is this old bastard still doing a good job for you or would you prefer another salesman?" (ER 140.) On another occasion, when Messick asked Fields about having Messick's son, age 41, work for Horizon, Fields replied that the son was "too old." (ER 144.)
 
 
 24
 Mohawk's brief is largely devoted to arguing the merits, but its argument is out of place at this stage of the case. "[A] rational trier of fact could, on all the evidence, find that the employer's action was taken for impermissibly discriminatory reasons." Wallis, 26 F.3d at 889. Summary judgment was therefore inappropriate.
 
 
 25
 Mohawk contends that the affidavit submitted by Messick in opposition to the motion for summary judgment should not be considered because it "contradicted his deposition testimony." As the foregoing discussion of the evidence shows, the deposition testimony given by Messick and Fields, plus the relevant exhibits and affidavits of other witnesses, suffice to establish the existence of triable issues with respect to age discrimination. In any event, Mohawk's argument amounts to no more than a series of quibbles about peripheral details in the deposition and the affidavit. While this court has held that a party may not "create his own issue of fact by an affidavit contradicting his prior deposition testimony", Foster v. Arcata Associates, Inc., 772 F.2d 1453, 1462 (9th Cir.1985), cert. denied, 475 U.S. 1048, 106 S.Ct. 1267, 89 L.Ed.2d 576 (1986), the non-moving party is not precluded from elaborating upon, explaining or clarifying prior testimony elicited by opposing counsel on deposition; minor inconsistencies that result from an honest discrepancy, a mistake, or newly discovered evidence afford no basis for excluding an opposition affidavit. See, e.g., Kennedy v. Allied Mut. Ins. Co., 952 F.2d 262, 266-67 (9th Cir.1991).
 
 
 26
 Mohawk also contends that Messick's affidavit should be excluded because Messick failed to supplement his responses to deposition questions in violation of Federal Rule of Civil Procedure 26(e). However, Fed.R.Civ.P. 26(e) as it stood at the time of submission of the motion for summary judgment, prior to the effective date of the 1993 amendments, did not impose a duty to supplement deposition testimony. See Fed.R.Civ.P. 26 advisory committee's note (1970 amendment) ("Subdivision (e) provides that a party is not under a continuing burden [to supplement answers] except as expressly provided." Exceptions applied to identity of witnesses and to prior answers later found to be incorrect.).
 
 
 27
 Finally, Mohawk argues that the federal and Oregon statutes of limitations have run on so much of the federal age discrimination claim as is based on actions that occurred more than 300 days before the filing of Messick's administrative complaint, and on so much of the state law claim as is based on actions that occurred more than one year before filing of the complaint. Inasmuch as Messick's termination provides a sufficient basis for his discrimination claim, there is no need to consider alternative or additional bases. Similarly, there is also no need to consider the parties' arguments over whether Messick can state a claim for retaliation under the ADEA; this matter can be left for resolution on remand.
 
 
 28
 The Oregon Age Discrimination Act. Because, as discussed above, Messick established a prima facie case of discrimination, summary judgment on the Oregon Age Discrimination Act claim was also inappropriate. See Henderson v. Jantzen, Inc., 79 Or.App. 654, 658, 719 P.2d 1322 (1986), rev. denied, 302 Or. 35, 726 P.2d 934 (1986) (rejecting three-part burden shifting analysis applied under federal discrimination law and requiring only that plaintiff establish prima facie case of discrimination to avoid summary judgment, even where defendant asserted nondiscriminatory reason for action).
 
 
 29
 The Wrongful Discharge Claim. Messick contends that he resisted age discrimination and was terminated for doing so. Oregon law makes it an unlawful employment practice for an employer "to discharge ... any person because the person has opposed any practices forbidden by this section [discriminatory practices] ..." Or.Rev.Stat. Sec. 659.030(1)(f) (1991). While Messick offered sufficient evidence from which a trier of fact could find that Mohawk discriminated against him on the basis of age, he proffered no evidence to show that he suffered discriminatory treatment because he opposed Mohawk's discriminatory practices. An employee who has been discharged on a discriminatory ground does not for that reason alone have a wrongful discharge claim under this statute. Cross v. Eastlund, 103 Or.App. 138, 796 P.2d 1214 (1990), rev. denied, 310 Or. 612, 801 P.2d 840 (1990).
 
 
 30
 Because Messick failed to come forward with evidence raising a triable issue, summary judgment on this claim must be affirmed.
 
 
 31
 Messick's Damage Claim. In ruling on a motion by Messick to compel discovery, the court stated that Messick was not entitled to recover damages for lost income over the period during which he was eligible to receive workers compensation or vocational rehabilitation benefits. (ER 187.) Because this statement was made in the course of an oral ruling and is not reflected in an order, we do not consider it determinative of the damages Messick may be entitled to recover upon trial of the age discrimination claims on remand. Moreover, this damages issue implicates questions of fact regarding whether Messick would have been available to work had he not been discharged, and potential questions of law regarding whether employee benefits mandated by state law should be treated as offsets to statutorily created damage claims; therefore, we will assume that the court will consider the damages question anew on remand in light of all the evidence if necessary.
 
 
 32
 The judgment is reversed in part and affirmed in part and the case remanded for further proceedings consistent with this opinion.
 
 
 
 *
 The Honorable William W. Schwarzer, Senior United States District Judge for the Northern District of California, sitting by designation