Argued and submitted October 21, 1998, reversed and remanded in part; otherwise affirmed May 24, 2000

# Dorothy HARDIE,
*Appellant,*

*v.*

# LEGACY HEALTH SYSTEM,
*Respondent.*

## (9610-07813; CA A99826)

6 P3d 531

Jennifer Lanfranco argued the cause for appellant. On the briefs were Richard C. Busse, Scott N. Hunt, and Busse & Hunt.

Charles F. Hinkle argued the cause for respondent. With him on the brief were Christine Kitchel, David E. Van't Hof, and Stoel Rives LLP.

Before Landau, Presiding Judge, and Deits, Chief Judge,* and Wollheim, Judge.

WOLLHEIM, J.

Deits, C. J., concurring.

Landau, P. J., dissenting.

---

* Deits, C. J., *vice* Rossman, S. J.

## WOLLHEIM, J.

Plaintiff commenced this action for damages against defendant, her former employer, alleging claims for retaliatory discrimination, ORS 659.410 (1995),[1] discrimination based on disability and perceived disability, ORS 659.425, and defamation, all arising out of defendant's treatment of plaintiff and ultimate termination of plaintiff's employment. The trial court granted defendant's motion for summary judgment, ORCP 47 C, and entered a judgment of dismissal on each claim. Plaintiff appeals and argues that there are genuine issues of material fact. We reverse and remand the judgment for defendant on the claim for retaliatory discrimination only. We otherwise affirm.

■       Viewing the evidence in the light most favorable to plaintiff, we review to ascertain whether defendant has shown that there are no genuine issues of material fact and that defendant is entitled to judgment as a matter of law. ORCP 47 C;[2] *Jones v. General Motors Corp.*, 325 Or 404, 408,

---

[1] In all instances, we refer to the 1995 version of ORS chapter 659 and to that version's accompanying administrative rules.

[2] ORCP 47 C (1997) provided, in part:

"The judgment sought shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No genuine issue as to a material fact exists if, based upon the record before the court viewed in a manner most favorable to the adverse party, no objectively reasonable juror could return a verdict for the adverse party on the matter that is the subject of the motion for summary judgment."

Or Laws 1999, ch 815, amended ORCP 47 C. Section one of the act made only a few changes to the text quoted from the 1997 rule above. Significantly, however, it added the following:

"The [*judgment sought shall be rendered forthwith*] **court shall enter judgment for the moving party** if the pleadings, depositions, **affidavits** and admissions on file[*, together with the affidavits, if any,*] show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter law. No genuine issue as to a material fact exists if, based upon the record before the court viewed in a manner most favorable to the adverse party, no objectively reasonable juror could return a verdict for the adverse party on the matter that is the subject of the motion for summary judgment. **The adverse party has the burden of producing evidence on any issue raised in the motion as to which the adverse party would have the burden of persuasion at trial. The adverse party may satisfy the burden of producing evidence with an affidavit under section E of this rule.**" (Italics and boldface in original.)

939 P2d 608 (1997); *Quillen v. Roseburg Forest Products, Inc.*, 159 Or App 6, 9, 976 P2d 91 (1999). Here, defendant bears the burden of showing the absence of any triable issues. *Jones,* 325 Or at 420. Indeed, where a plaintiff has established a *prima facie* case for recovery and a defendant has "identified a factual question on which [the] plaintiff would have the burden at trial, [the] defendant[ ] cannot prevail on summary judgment." *Id.* Defendant must show that "no objectively reasonable juror could return a verdict" for plaintiff. *Id.* at 412.

Because plaintiff's case rests primarily on inferences, rather than on direct evidence, we discuss the evidence in some detail. The evidence most favorable to plaintiff establishes that she was an employee of defendant, Legacy Health System, and its predecessor from 1988 until late April 1996, when defendant discharged plaintiff. Until December 1995, plaintiff received generally positive work performance reviews in her positions in the accounts payable and purchasing departments. However, plaintiff admitted that some of those reviews noted inconsistency in her work performance and morale. In October 1995, Lisa Davis became plaintiff's supervisor in the purchasing department. At that time, plaintiff held the position of "Capital Buyer" with the corporate office.

In mid-December 1995, plaintiff and Davis had a work-related disagreement, in which Davis noted plaintiff's "insubordination" toward Davis. Several days later, Davis

---

Section two of the act provides that "[t]he amendments to ORCP 47 C * * * apply to all actions pending on or commenced after the effective date of this 1999 Act."

This case was pending before the Court of Appeals, not the circuit court, when the amendment went into effect. The parties do not argue that any changes effected by the amendment to ORCP 47 C should be applied in this case in the first instance on appeal, and we decline to apply those amendments on our own motion. *See Doe v. American Red Cross,* 322 Or 502, 910 P2d 364 (1995) (in affirming reversal of summary judgment on the ground that the moving party had failed to demonstrate the absence of a genuine issue of material fact, Supreme Court did not apply on its own motion the 1995 amendments to ORCP 47 C that applied to "all actions, whether commenced before, on or after the effective date" of the amendments); *cf. Jones v. General Motors Corp.,* 139 Or App 244, 264, 911 P2d 1243 (1996), *aff'd on other grounds* 325 Or 404, 939 P2d 608 (1997) (applying revised summary judgment standard on appeal would violate due process); *see also State v. Meyers,* 153 Or App 551, 559-60, 958 P2d 187 (1998) (changing the rules of evidence retroactively raises serious questions of due process).

conducted her first performance review of plaintiff and made a preliminary determination that plaintiff's performance was "unacceptable." Davis noted plaintiff's frequent absences due to illness, her frequent tardiness and smoke breaks, and her chronic backlog of work. Davis concluded that she was unable, at that time, to complete the review and informed plaintiff that she would complete it at a later time after further observation. From the beginning of January until plaintiff called in sick on the 23rd, plaintiff was late to work every day that she reported for work.[3]

On January 24, 1996, plaintiff left a voice mail message for Davis indicating that plaintiff would be absent for an "indeterminate period of time" due to stress. Davis learned from Dennis Phister, her supervisor in the human resources department, that plaintiff planned to file a workers' compensation claim for emotional problems and stress and that plaintiff had arranged for her personal belongings to be picked up by a friend. Davis stated that January 24 was the first day that she learned of plaintiff's emotional distress. Davis and Phister met that day regarding plaintiff. In Davis's notes from that meeting, she wrote *"Termination Plan"* at the top of the page. Further down the page, she specifically mentioned plaintiff's *"Workers' Compensation / Stress"* claim and resolved to "post job immediately" as well as to "be ready for her if/when she does return." Other notes drafted by Davis concerning plaintiff also chronicled plaintiff's work deficiencies and noted her frequent absences due to illnesses. On January 29, 1996, Davis wrote a note to the file concerning plaintiff. In that note, Davis recorded her observations that plaintiff was often sick. She also noted that:

> "When [plaintiff] called in sick with another migraine on 1/23/96, it was not a surprise. * * *

> "[Plaintiff] appears to have things in her personal life which are causing her to be unable to perform her work, and she needs to get treatment and find resolution. I support whatever services Legacy makes available to its employees at times such as this in an individual's life.

> "* * * * *

---

[1] Plaintiff was absent from work on January 4 and 5 due to panic attacks.

"Should [plaintiff] recuperate from her stress and wish to return at Legacy, it is my understanding that the organization is obliged to find a position for her which is amenable to her prognosis for coping and performance at that time. There is not any anticipated diminishment of stress in the Purchasing Department over the coming year, inasmuch as we have taken on substantial additional commitment of work in support of the organization."

On January 31, 1996, plaintiff filed her workers' compensation claim for panic attacks and stress, originating from her negative performance review with Davis. Davis stated that that was the first time that she learned that plaintiff suffered from panic attacks. Plaintiff also stated that she suffered from agoraphobia.[4] Dr. Goranson, a psychiatrist, evaluated plaintiff in March 1996. Goranson diagnosed plaintiff with "adjustment disorder with mixed emotional features now mostly resolved," and concluded:

"I don't think that there will be any permanent impairment related to her current psychiatric condition (which I think is work related only in the sense of it being related to reasonable disciplinary action). With respect to the question whether she is able to return to work, I would think she could return to work, from a psychiatric standpoint. Given her feelings about that particular workplace, it is doubtful that such a situation would work out to anyone's satisfaction."

Plaintiff remained on leave with time loss pay until March, when Legacy offered plaintiff a "light duty" position at another facility. Plaintiff was offered the same rate of pay for operating a photocopier machine 40 hours a week. After a day and a half of work, plaintiff left that position because she experienced panic attacks. Plaintiff requested that she be transferred back to her original facility in the purchasing department. No action was taken on that request.

In early April 1996, Davis received an inquiry from a Legacy accountant regarding a questionable purchase originating from Davis's department. Davis retrieved the purchase order and discovered that plaintiff had authorized an employee purchase of a microwave for herself in October

---

[1] Plaintiff defined agoraphobia as a fear of leaving her home.

1995 and that plaintiff had yet to pay for the microwave. Davis then wrote to Phister about her "serious concern" that plaintiff "abused her position as a Buyer for personal gain, and did so without authorization or knowledge of anyone in the department." She also explained that plaintiff "did not pay * * * for the item, allowing [defendant] to pay the vendor for it. [Plaintiff] had ample opportunity to make payment for this purchase, if she was to make a legitimate transaction, but she did not."

Defendant had a policy to be fair to employees and to withhold judgment until an investigation of wrongdoing is completed. On April 17, 1996, Phister and Davis met with plaintiff about the purchase. No written policy existed for employee purchases. It appears those purchases were allowed, and plaintiff believed she followed most of the normal procedures for making such a purchase. Plaintiff, however, admitted that a supervisor, not the employee purchaser, was supposed to authorize the purchase and that buyers were supposed to avoid even the appearance of impropriety. At the meeting, plaintiff told Phister and Davis that she had authorized the purchase and had paid for it. However, when she returned home, she discovered that she had not paid for the item.[5] The next day she sent a check and a note of apology, recognizing her "serious error" and that she thought she had paid for the item. Plaintiff stated that she viewed the matter "as serious an issue as [Phister and Davis] obviously * * * did."

Davis recommended to Phister that plaintiff's employment be terminated because of the employee purchase. On April 23, 1996, Phister terminated plaintiff's employment. In the termination letter, Phister cited only plaintiff's unauthorized employee purchase of the microwave as the reason for discharge. He noted that, because plaintiff was an "experienced Buyer," she knew the purchasing process from start to finish and was familiar with the need for prior approval of employee purchases. Thus, her failure to

---

[5] Plaintiff later indicated that she attempted to pay for it when she picked up the appliance but was told to wait to pay until the invoice arrived. She claims that she was not informed when the invoice arrived, and plaintiff never inquired again about the invoice.

obtain approval and to pay for the item until five months after receiving the item represented "poor judgment" and constituted cause for termination.

At some date after plaintiff's discharge, an employee of defendant told a third party, Maggie Brister, that plaintiff purchased an appliance through defendant "without paying for it." That statement was made in the context of plaintiff's discharge. Two months after her discharge, plaintiff accepted employment with a different employer as an accounts payable clerk. At the time of the motion for summary judgment, plaintiff worked as an office manager at a local business.

Plaintiff filed a complaint alleging four claims for relief. The first claim alleged that her employment was terminated in retaliation for filing her workers' compensation claim. The second and third claims alleged, in essence, that defendant discriminated against plaintiff, based on her disabilities or perceived disabilities of agoraphobia and panic attacks, by failing to accommodate her disability in the work place and by discharging her. Plaintiff's fourth claim was for defamation regarding the statements made to Brister about plaintiff's discharge.

■ The trial court found that plaintiff was not disabled under ORS 659.425(1), because plaintiff's disability was only temporary with no lasting effects. It also concluded that defendant discharged plaintiff because of her unauthorized employee purchase and not in retaliation for her workers' compensation claim or due to any disability or perceived disability. Last, the court concluded that the statements to Brister about plaintiff's employee purchase were not defamatory, in part because plaintiff admitted that the unauthorized employee purchase raised a "serious issue" about her honesty and fitness. We agree that merely reciting the stated basis for plaintiff's discharge is not, under these circumstances, defamatory. We, therefore, affirm the trial court's ruling on the defamation claim and limit our discussion to the three discrimination claims.

■ We first address plaintiff's retaliatory discrimination claim. ORS 659.410(1) makes it unlawful for an employer to

discriminate against a worker who files a workers' compensation claim. To establish a *prima facie* case for retaliatory discrimination under ORS 659.410(1), plaintiff must show

"(1) that the plaintiff invoked the workers' compensation system; (2) that the plaintiff was discriminated against in the tenure, terms or conditions of employment; and (3) that the employer discriminated against the plaintiff in the tenure or terms of employment because he or she invoked the workers' compensation system." *Stanich v. Precision Body and Paint, Inc.*, 151 Or App 446, 457, 950 P2d 328 (1997).

Plaintiff satisfied the first two elements by producing evidence that she filed the workers' compensation claim and that defendant subsequently terminated her employment. Thus, to complete a *prima facie* case, plaintiff must establish that defendant discharged her *because* she had filed a workers' compensation claim. Considering the totality of the circumstances, we focus on whether a triable issue exists concerning defendant's motive for plaintiff's discharge.

■       An employer may discharge an employee "for cause," notwithstanding the existence of a workers' compensation claim, so long as the discharge is not motivated by the claim. *Vaughn v. Pacific Northwest Bell Telephone*, 289 Or 73, 91, 611 P2d 281 (1980) ("[A]n employer may discharge for cause and not violate the statutory discrimination provisions. But an employer may not discharge if the motivation is discrimination proscribed by statute.").

Here, plaintiff alleges that filing her workers' compensation claim was a "substantial factor," but not the only factor, contributing to her discharge. Because she is claiming that her "discharge [was] motivated in part by * * * misconduct and in part by unlawful discrimination by the employer," plaintiff's claim alleges a "mixed motive" for her discharge. *Shaw v. Doyle Mining Co.*, 297 Or 251, 256, 683 P2d 82 (1984). Defendant denies any discriminatory motive and asserts a nondiscriminatory reason for its termination of plaintiff, namely an unauthorized employee purchase. Viewing the evidence in the light most favorable to plaintiff, we conclude, for the purposes of review here, that plaintiff's workers' compensation claim played some factor in the decision to terminate her and that her claim is a "mixed motive" claim.

"Mixed motive," as used in employment discrimination claims arising under Oregon law, is not the term of art it is under federal discrimination claims. Under federal law, the factfinder analyzes a discrimination claim as either a "pretext" claim, which carries a shifting burden of production, or as a "mixed motive" claim, which carries a shifting burden of production *and* persuasion when the plaintiff can produce "direct evidence of discriminatory animus." *Price Waterhouse v. Hopkins*, 490 US 228, 278, 109 S Ct 1775, 104 L Ed 2d 268 (1989) (O'Connor concurring). *See also Fernandes v. Costa Brothers Masonry, Inc.*, 199 F3d 572, 579-81 (1st Cir 1999) (describing the two approaches); *Fuller v. Phipps*, 67 F3d 1137, 1141-44 (4th Cir 1995) (also describing legislative changes to the "mixed motive" analysis established by *Price Waterhouse*). Under the federal scheme, a claim is designated as a "mixed motive" claim only when the plaintiff meets a heightened evidentiary burden, not from the mere existence of multiple motives. *Id.* at 1142. If this were a federal claim, we would have to determine whether Davis's notes from the January 24 meeting, where plaintiff's workers' compensation claim and a termination plan were discussed, constituted "direct evidence of discriminatory animus" sufficient to invoke the shifting burden of proof for a "mixed motive" claim. Oregon employment discrimination analysis differs from the federal approach.

■ The Oregon Supreme Court has rejected the shifting burden of production scheme for "pretext" claims (sometimes referred to as "simple" or "either-or" claims) brought under Oregon law. *City of Portland v. Bureau of Labor and Ind.*, 298 Or 104, 114-15, 690 P2d 475 (1984). In prior opinions, this court has questioned whether the burden-shifting scheme employed for federal "mixed motive" claims applies to similar claims arising under Oregon law. *See Marconi v. Guardian Management Corp.*, 149 Or App 541, 550-51, 945 P2d 86 (1997); *McCall v. Dynic USA Corp.*, 138 Or App 1, 8, 906 P2d 295 (1995); *Callan v. Confed. of Oreg. Sch. Adm.*, 79 Or App 73, 78, 717 P2d 1252 (1986). Because the Supreme Court has rejected the shifting burden of production scheme for "pretext" discrimination claims, we believe it would also reject the more onerous shifting burden of proof for "mixed motive" claims. We therefore hold that there is no shifting burden of

proof for "mixed motive" employment discrimination claims brought under Oregon law. Consequently, there is no distinction between how "pretext" claims and "mixed motive" claims are analyzed under Oregon law. Because we reach this conclusion, the concerns about the procedural distinctions between the two types of claims that Chief Judge Deits expresses in her concurrence are not an issue.

To prevail in a "mixed motive" claim, a plaintiff must be able to "show that he or she 'would not have been fired but for the unlawful discriminatory motive of the employer.' " *McCall*, 138 Or App at 8 (quoting *Vaughn*, 289 Or at 92). We have not further clarified the meaning of the "but for" standard in employment discrimination cases. However, *NLRB v. Whitfield Pickle Company*, 374 F2d 576, 582 (5th Cir 1967), a case cited by *Vaughn*, 289 Or at 92, describes "but for" causation as meaning "in the absence of the [discriminatory motive, the employer] would have treated the employee differently."[6] We have also described the evidentiary standard for employment discrimination claims by using language other than "but for." In *Seitz v. Albina Human Resources Center*, 100 Or App 665, 675, 788 P2d 1004 (1990), we held that the protected activity must be a "substantial factor" in the wrongful discharge.[7] In *Estes v. Lewis and Clark College*, 152 Or App 372, 381, 954 P2d 792, *rev den* 327 Or 583 (1998), we held that an employer's wrongful purpose must be "a factor that made a difference." The crux of the standard, regardless of which phraseology is attached to it, is whether, in the absence of the discriminatory motive, the employee would have been treated differently. We conclude that plaintiff's

---

[6] In *Price Waterhouse*, 490 US at 240, the United States Supreme Court explained:

"But-for causation is a hypothetical construct. In determining whether a particular factor was a but-for cause of a given event, we begin by assuming that that factor was present at the time of the event, and then ask whether, even if that factor had been absent, the event nevertheless would have transpired in the same way."

If an event would have transpired in the same way, a factor is not a "but for" cause.

[7] In *Seitz*, we imported that qualification from Title VII of the Federal Civil Rights Act and the tortuous wrongful discharge jurisprudence, noting that Oregon's employment discrimination laws are modeled after Title VII. Thus, that federal case law is instructive in Oregon employment discrimination cases. *Id.* at 672-73; *see also Winnett v. City of Portland*, 118 Or App 437, 442, 847 P2d 902 (1993) (applying "substantial factor" test to ORS 639.030(1)(b)).

evidence raises a genuine issue of material fact regarding whether defendant would have fired plaintiff but for her decision to file a workers' compensation claim.

Plaintiff's evidence focuses on the actions of her supervisors, Phister and Davis. Plaintiff can survive the motion for summary judgment only if the evidence permits a jury to find either (1) that as the supervisor who actually discharged plaintiff, Phister was motivated to discharge plaintiff because of her workers' compensation claim; or (2) that Davis was the wrongfully motivated supervisor and was so influential in the decision to discharge plaintiff as to be a "substantial factor" in the discharge. *Id.* at 382.

Plaintiff argues that a jury may infer from her evidence that Phister discharged her because of her workers' compensation claim. She points to Davis's notes from the January 24 meeting between Davis and Phister. In these notes, Davis specifically mentioned a "termination plan" in connection with plaintiff's workers' compensation claim. Davis's notes indicate that Phister and Davis discussed terminating plaintiff more than two months *before* either was aware of the purchase of the microwave. Thus, a reasonable juror could infer that Phister reached his decision to fire plaintiff because she filed a workers' compensation claim. Even if we assume that Davis's notes cannot supply direct evidence of Phister's motives, the notes, at the very least, supply evidence of Davis's discriminatory motive. Further, the record reveals that, as plaintiff's direct supervisor, Davis's recommendation to Phister to discharge plaintiff "made a difference" in the decision to terminate plaintiff's employment. *Estes*, 152 Or App at 381. Interpreting these facts in the light most favorable to plaintiff, we conclude that plaintiff has made a *prima facie* case of employment discrimination.

Defendant offers a nondiscriminatory motive for the discharge of plaintiff. Indeed, plaintiff admitted violating the unwritten policy about employee purchases, that the violation was a "serious error," and that she bore a duty to avoid even the "appearance of impropriety." Defendant also refutes some of plaintiff's evidence of pretext—namely by arguing that the investigation into the employee purchase was fair,

and that, regardless of whether or not the employee purchase policy was written, plaintiff admitted to violating defendant's policy. However, on summary judgment, defendant bears the burden to show that there are no genuine issues of material fact. In *Callan*, we explained that we understand plaintiff's *initial prima facie* burden in employment discrimination cases "as being so minimal that it is virtually impervious to a motion based on evidentiary sufficiency." 79 Or App at 78 n 3. Likewise, the Ninth Circuit, applying Oregon law, concluded that where an employee establishes a *prima facie* claim of unemployment discrimination, summary judgment is inappropriate even in the face of assertions by the defendant of nondiscriminatory action. *Messick v. Horizon Industries Inc.*, 62 F3d 1227, 1232 (9th Cir 1995). Furthermore, in *Henderson v. Jantzen, Inc.*, 79 Or App 654, 658, 719 P2d 1322, *rev den* 302 Or 35 (1986), we said "[a] plaintiff's *prima facie* case does not disappear merely because a defendant asserts a nondiscriminatory reason which may or may not persuade the trier of fact." Defendant's evidence does not negate the inference that plaintiff's workers' compensation claim motivated defendant's "termination plan."

We note that this case is not analogous to *Estes*, where we affirmed summary judgment in favor of the employer. In *Estes*, as here, the employer advanced a nondiscriminatory motive to discharge the plaintiff. However, in *Estes*, the plaintiff was unable to adduce *any* evidence to support an inference of discriminatory motive on the part of the supervisors who actually discharged her. In contrast, here, plaintiff has produced evidence sufficient to support such an inference. Defendant's evidence does not, in turn, negate the inference from which an objectively reasonable juror could conclude that, more probably than not, plaintiff's workers' compensation claim was a "substantial factor" in defendant's motivation to discharge plaintiff. *Estes*, 152 Or App at 381. Thus, a "triable issue" remains, and we therefore reverse the trial court's grant of summary judgment on the workers' compensation discrimination claim and remand that claim for trial.[8]

---

[8] The dissent argues that, because defendant took no steps to fire plaintiff for four months after it learned about plaintiff's workers' compensation claim and fired plaintiff only after it learned about plaintiff's employee purchase, the

We turn next to plaintiff's claims of discrimination based on disability and perceived disability. ORS 659.425(1) makes it unlawful for an employer to discriminate against an individual because

"(a) An individual has a physical or mental impairment which, with reasonable accommodation by the employer, does not prevent the performance of the work involved;

"* * * * *

"(c) An individual is regarded as having a physical or mental impairment."

On appeal, plaintiff argues that the evidence demonstrates a disputed question of fact as to whether defendant failed to "reasonably accommodate" her disabilities of agoraphobia and panic attacks. She also argues that the evidence creates a disputed question of fact as to whether defendant discriminated against her through adverse employment actions, including termination, because it perceived her as disabled. We conclude that summary judgment was appropriate, because the record demonstrates neither a genuine issue as to a material fact regarding whether plaintiff is a "disabled person" nor whether defendant perceived plaintiff as disabled.

To make out a *prima facie* case for disability discrimination under ORS 659.425, plaintiff must present sufficient evidence that she is a "disabled person." *Marconi*, 149 Or App at 547-48. ORS 659.400(1) defines a "disabled person" as "a person who has a physical or mental impairment which substantially limits one or more major life activities * * *." We assume, without discussion, that plaintiff's alleged conditions of agoraphobia and panic attacks are cognizable "mental impairments" under ORS 659.400(1). A "major life activity" includes employment. ORS 659.400(2)(a). Plaintiff must

---

evidence proves only that defendant contemplated discharging plaintiff in retaliation for her workers' compensation claim. We do not agree. Rather, the strength of plaintiff's inference makes it possible for a reasonable jury to conclude that the employee purchase was merely a pretext for discharging her and that she "would not have been fired but for the unlawful discriminatory motive of the employer." *McCall*, 138 Or App at 8 (quoting *Vaughn*, 289 Or at 92). Indeed, that is the very *fact* issue of this case, which is in the jury's, not the judge's, province to resolve.

establish that her disabilities prevented her from performing "the work involved," as opposed to employment generally, or employment with a particular employer in a position of plaintiff's choosing. *Winnett*, 118 Or App at 446-47. The work involved here is that of "buyer." It is undisputed that, at one point, plaintiff was unable to report to her job and complete the duties of buyer. It is also undisputed that plaintiff is now able to work, generally. Thus, we must consider whether her alleged disabilities still prevent her from completing the duties of "buyer."

Defendant argues that, even accepting plaintiff's reports of panic attacks and self-diagnosis of agoraphobia, those mental impairments were only temporary and thus not a "disability." Alternatively, defendant argues that, to the extent plaintiff's conditions still impede her employment capabilities, those conditions only prevent her from working as a capital buyer under the supervision of Davis in the purchasing department. "Short term physical or mental impairments leaving no residual disability or impairment are not disabilities * * *." OAR 839-06-240(1) (1996). Plaintiff counters that there is evidence that her conditions are "mutable" and are therefore disabilities. OAR 839-06-240(3) (1996). "Mutable conditions [are those] which are controllable by diet, drug therapy, psychotherapy, or other medical means * * *." *Id.*

Plaintiff's workers' compensation claim form and the medical testimony indicate only that she could not perform the duties of buyer *under the supervision of Davis*. On plaintiff's self-report, Davis was the source of her stress and resulting panic attacks and agoraphobia. Indeed, even Goranson specifically noted that plaintiff's attitudes toward defendant's work environment was the only impediment to her returning to work. Goranson also concluded that there would be no "permanent impairment related to [plaintiff's] current psychiatric condition," and that plaintiff could return to work "from a psychiatric standpoint." Thus, Goranson concluded that plaintiff's psychological conditions would dissipate and not impede her ability to work. Nothing in the record allows a factfinder to infer that plaintiff is incapable of performing the work of "buyer," generally. We therefore conclude that there is no issue of material fact as to whether

plaintiff is a "disabled person" under ORS 659.425 and affirm summary judgment for defendant on that claim.

■■■■■ Similarly, the record is devoid of any indication that Davis, Phister, or any other employee of defendant perceived plaintiff as disabled. Davis's January 29 notes and other memos suggest that Davis perceived plaintiff as prone to migraine headaches and other illnesses and that the absences attendant to such illnesses affected plaintiff's ability to complete her work. Such notations, made both before and after plaintiff's panic attacks began to occur, do not, under the circumstances, give rise to a question of whether Davis perceived plaintiff's stress and panic attacks as incapacitating plaintiff indefinitely.[9] Rather, Davis's January 29 notes indicate that Davis perceived plaintiff's personal situation as temporary and that Davis contemplated its resolution and plaintiff's recuperation. The most that can be inferred from Davis's notes is that her *particular department* may not be amenable to plaintiff because of the stress involved in *that department*, but it does not support an inference that Davis believed that plaintiff could not perform the work of a buyer. The evidence does not support an inference that Davis perceived plaintiff as disabled. Accordingly, we affirm the summary judgment in favor of defendant on the issue of perceived disability.

We reverse judgment in favor of defendant on the retaliatory discrimination claim, ORS 659.410, and remand that claim for trial. We affirm judgment in favor of defendant on the disability discrimination, ORS 659.425, perceived disability discrimination, ORS 659.425, and defamation claims.

Reversed and remanded on claim of retaliatory discrimination; otherwise affirmed.

---

[9] We do not mean to infer that a plaintiff must actually suffer from a disability before we can recognize an employer's perception of disability. Perceived disabilities do not have to be real. *OSCI v. Bureau of Labor and Industries*, 98 Or App 548, 553, 780 P2d 743, *rev den* 308 Or 660 (1989). However, in this case, the timing of the onset of plaintiff's alleged disability is probative of what her employer perceived.

**DEITS, C. J.,** concurring.

I agree with the lead opinion's holding, including its conclusion that there are genuine and disputed questions of material fact that preclude summary judgment against plaintiff on her claim for retaliatory discrimination. However, I do not agree with the lead opinion's analysis of the "mixed motive" doctrine and of how that doctrine applies to this and other employment discrimination cases arising under ORS chapter 659.

In *Vaughn v. Pacific Northwest Bell Telephone*, 289 Or 73, 91, 611 P2d 281 (1980), the Oregon Supreme Court adopted a variation of the federal mixed motive doctrine for application in discrimination actions under the Oregon statutes. It may be, as the lead opinion suggests, that the doctrine is somewhat discordant in the context of Oregon discrimination law as it has evolved since *Vaughn* was decided. It also appears to be the case that federal law on the subject has changed considerably since the decision in *Vaughn*, while Oregon mixed motive law has remained more or less static. Nevertheless, *Vaughn* remains a controlling interpretation of an Oregon statute by the Oregon Supreme Court.

In my view, neither the lead opinion nor the dissent correctly apply *Vaughn* or the mixed motive doctrine as it has been formulated in that and the other pertinent Oregon cases. The lead opinion correctly distinguishes between "pretext" cases, where the issue is simply whether the employer acted out of a discriminatory motive, and mixed motive cases, where the employer had both lawful and unlawful motives and the issue is whether the discharge or other employment action would have been taken but for the unlawful one. 167 Or App at 434-35. The lead opinion is also correct in stating that the Oregon courts have held that the "shifting burden" formulation of the federal case law is inapplicable in pretext-type actions under the state statute. The lead opinion concludes:

> "Because the Supreme Court has rejected the shifting burden of production scheme for 'pretext' discrimination claims, we believe it would also reject the more onerous shifting burden of proof for 'mixed motive' claims." 167 Or App at 434-35.

With all respect, I think that the lead opinion misses the point. The "shifting burden" rubric that has been adopted by the federal courts and rejected by the Oregon cases pertains *only* to the mechanics of proof of the *plaintiff's* case, and it applies only in the *pretext* case context. Those mechanics were explained in *Lewis and Clark College v. Bureau of Labor*, 43 Or App 245, 252, 602 P2d 1161 (1979), *rev den* 288 Or 667 (1980) (Richardson, J., dissenting):

> "[The employer] concedes that [the female claimant] made a prima facie showing of discrimination. That means, in essence, that she proved she applied for the position, that she was qualified for the position, that she was not interviewed or hired, and that a male applicant was interviewed and hired. Those facts constitute a prima facie case under the United States Supreme Court's decision in *McDonnell Douglas Corp. v. Green*, 411 US 792, 93 S Ct 1817, 36 L Ed 2d 668 (1973), and later decisions relating to burden and order of proof in discrimination cases under Title VII of the Civil Rights Act of 1964 (42 USC § 2000e *et seq.*). Under *McDonnell Douglas*, after the complainant makes such a prima facie showing, the burden shifts to the employer to 'articulate some legitimate, nondiscriminatory reason' for its action. 411 US at 802. If the employer articulates such a reason, the burden is on the complainant to prove that the employer's purported reason is not the actual reason or is a pretext."

Conversely, under the mixed motive doctrine, as presently formulated by the Oregon statutes and decisions, there is no question about the burden of proof—shifting or otherwise—that applies to the establishment of the *plaintiff's* case. Rather, the existence of the concurrent lawful motive is a "matter of defense," *Vaughn*, 289 Or at 80, that, like any other affirmative defense, the defendant has the burden of proving. As the Supreme Court explained in *Shaw v. Doyle Milling Co.*, 297 Or 251, 255-57, 683 P2d 82 (1984):

> "Employer argues that under our decision in *Vaughn v. Pacific Northwest Bell Telephone, supra*, Shaw cannot prevail because he did not prove that he would not have been discharged 'but for' a discriminatory motive of his employer. In *Vaughn* we stated:

" 'If the worker is discharged for just cause, the employer can prove this * * * as a matter of defense in a suit pursuant to ORS 659.121.'

"289 Or at 80. We formulated the 'just cause' issue:

" 'The question then is what effect the employer's evidence of just cause for discharge has on the court's remedial authority in OR 659.121(1).'

"289 Or at 90. We did state that in cases of mixed motives for the discharge, i.e., where the discharge is motivated in part by poor work record or misconduct and in part by unlawful discrimination by the employer, the employee could not prevail unless the court

" 'finds that the employee would not have been discharged but for the unlawful discriminatory motive of the employer.'

"289 Or at 92. In the case at bar the invocation of that language from *Vaughn* is of no avail.

"* * * * *

"In the instant case, Employer did not establish any just cause for discharge; therefore, Shaw did not have to show that he would have been reinstated 'but for' Employer's unlawful employment practice."

*See also Callan v. Confed. of Oreg. Sch. Adm.*, 79 Or App 73, 78, 717 P2d 1252 (1986) and authorities there cited; *cf. Lane County Public Works Assn. v. Lane County*, 118 Or App 46, 52, 846 P2d 414 (1993) (stating analogous principle as to "mixed motive" doctrine in context of labor law case).

In my opinion, when the mixed motive doctrine in the Oregon cases is properly understood and applied, it does not, as the lead opinion indicates, place a "more onerous" burden of proof on plaintiffs than the one that applies in simple "pretext" cases. 167 Or App at 434. In both instances, the plaintiff employee has the ultimate burden of establishing that the employer acted with an unlawful motive that contributed causally to the discharge or other employment action. It *may* be that, in mixed motive cases, the "but for" test of causation is higher than the causation test in straight "pretext" cases. However, before that heightened test becomes applicable, the employer must prove not only that

there was an alternative reason for the discharge than the discriminatory motive that the plaintiff must prove in any event, but that the alternative reason amounts to objective "just cause." Ironically, notwithstanding its concern over placing a more onerous burden on the plaintiff, the end result of the lead opinion's analysis is to apply the "but for" causation test to the plaintiff, without placing any intervening burden on the defendant to establish affirmatively that it was motivated by anything other than discrimination.

Under any conceivable standard of who must prove what, however, I agree with the lead opinion that the evidence in this summary judgment proceeding was such that a trier of fact could infer that defendant's improper motive was the reason for plaintiff's discharge.[1]

**LANDAU, P. J.,** dissenting.

Although I agree with the majority's disposition of plaintiff's other claims, I do not agree with its decision to reverse the trial court's entry of summary judgment in favor of defendant on the retaliatory discharge claim. In my view, the trial court was correct in concluding that defendant is entitled to judgment on that claim as a matter of law.

As I understand the law, to establish a retaliatory discharge claim, a plaintiff must show that "he or she 'would not have been fired but for the unlawful discriminatory motive of the employer.'" *McCall v. Dynic USA Corp.*, 138 Or App 1, 8, 906 P2d 295 (1995) (quoting *Vaughn v. Pacific Northwest Bell Telephone*, 289 Or 73, 92, 611 P2d 281 (1980)).

In this case, at most, the facts show that defendant *contemplated* terminating plaintiff near the time when her supervisors learned that she intended to file a workers' compensation claim. It was then, in January 1996, that plaintiff's supervisors met to discuss a *"Termination Plan"* and, at that same meeting, also mentioned plaintiff's *"Workers' Compensation / Stress"* claim. Plaintiff, however, must prove more

---

[1] It is important to emphasize that federal and state law on the mixed motive doctrine have never been identical—except possibly for the fleeting moment that *Vaughn* was decided. This opinion is based on my understanding that *Vaughn* and *Shaw* continue to embody Oregon law, despite the fact that the federal cases have passed them from a variety of directions since their decision.

than that defendant thought about terminating her position. Instead, a reasonable juror must be able to find that she " *would not have been fired* but for the unlawful discriminatory motive of the employer.' " *McCall*, 138 Or App at 8 (quoting *Vaughn*, 289 Or at 92) (emphasis added). That is the missing step in plaintiff's proof in this case. After the January 1996 meeting, defendant took no steps to fire plaintiff. On the contrary, plaintiff remained on leave with time loss pay until March, when defendant offered plaintiff a "light duty" position. Even after plaintiff worked only a day and a half at that position, before leaving because she experienced panic attacks, defendant still did not seek to terminate plaintiff's position.

On this record, the undisputed evidence is that, however defendant may have felt about plaintiff and about the fact that she had filed a workers' compensation claim, defendant did not fire her or take any steps to fire her until her supervisors learned, in April 1996, that she had made an unauthorized purchase for which she never reimbursed defendant. That was some four months after plaintiff left her job and three months after she filed her workers' compensation claim. Only then did defendant decide to fire her and terminate her job. On this evidence, no reasonable juror could find that plaintiff "would not have been fired but for the unlawful discriminatory motive of the employer," if any. *McCall*, 138 Or App at 8. Indeed, the evidence is all to the contrary. For that reason, the trial court did not err in granting summary judgment to defendant on plaintiff's claim of retaliatory discrimination.

I respectfully dissent.