Submitted October 29, 2010, reversed April 13, 2011

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## JO ANNE BELLAH,
*Defendant-Appellant.*

Josephine County Circuit Court
03CR0772, 051671M;
A140219 (Control), A140220

252 P3d 357

---

Peter Gartlan, Chief Defender, and Erica Herb, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

John R. Kroger, Attorney General, Jerome Lidz, Solicitor General, and Jamie K. Contreras, Assistant Attorney General, filed the brief for respondent.

Before Haselton, Presiding Judge, and Brewer, Chief Judge, and Armstrong, Judge.

BREWER, C. J.

**BREWER, C. J.**

Defendant appeals from her convictions for a variety of drug offenses, as well as for child neglect, child endangerment, criminal trespass, and reckless endangerment, all stemming from her alleged participation in the manufacture and distribution of methamphetamine. Defendant assigns error to the trial court's denial of her motion to dismiss the charges against her on the ground that her statutory right to a speedy trial was violated. ORS 135.747. The parties stipulated that 26 of the 40 months of cumulative delay in the case were attributable to the state, and defendant argues that that delay was unreasonable and that there was insufficient reason to have continued the case.[1] We reverse.

Defendant was indicted on October 31, 2003, and entered a plea of not guilty. The case was set for trial on May 19, 2004. The state requested a set-over, resulting in a new trial date of June 22. Defendant then requested a set-over, and the case was set for trial on October 14. The court then set over the case again because, according to a docket entry, there were no judges available to hear the case on October 14, and the case was reset for trial on February 8, 2005. The state then requested yet another set-over, and the case was reset for trial on May 25. Subsequently, the court postponed the trial because, again according to a docket entry, there were no judges available to hear the case on May 25, and the case was reset for trial on November 3. Defendant's attorney then requested another set-over so that she could attend a wedding, resulting in a new trial date of December 13. As that date drew near, defendant's new attorney, Jordan—who had recently taken over the case from defendant's previous counsel—requested another set-over in order to prepare for trial, and the case was rescheduled for March 30, 2006. Again, as that date approached, defendant's new attorney, Roloff, who had taken over defendant's representation from Jordan, requested a set-over so that he could prepare for trial. The case was set for trial on October 24. As that date approached, Judge Wolke, the designated trial

---

[1] Because of our disposition of defendant's first assignment of error, we need not reach her second assignment.

judge, notified the parties that he had a potential conflict.[2] Judge Wolke had represented defendant in the past and had withdrawn from representing her in January 2004. Judge Wolke asked the parties whether they would waive the conflict; defendant declined to do so, and the case was finally reset for February 21, 2007.

The case proceeded to trial on February 21, and defendant moved for dismissal of the charges on statutory speedy trial grounds. The state stipulated that 26 months of the 40 months of cumulative delay were attributable to it, but it argued that that delay was reasonable. The prosecutor explained:

"[W]hat we have here is—of course this is not attributable to the defense the fact that there were two judges that were conflicted off; it was Judge Wolke and Judge Neuman. It's not their fault so the time counts against us. * * *

"And I suggest to the court it is reasonable because that's a—that's a factor that unfortunately we had to take into consideration, because we have four full-time judges. You minus two away from those four, we're left with two.

"The reason why that adds to the problem is that these cases, because they were consolidated, were set for multiple days.[3] And so now you have—it's hard enough to get in front of a judge for multiple day trials, but now we have only two judges we're trying to docket for multiple day trials.

"The last thing is—another factor is there were also, I believe, two or three set-overs by the state. And, again, there were—I believe motions filed by the state for various reasons. But it wasn't something where there was no—that delay wasn't something where there was no specific request by the state for whatever reason; witness issues—I believe, one of them was because a lab tech was not available.

"But the delay was because of those specific reasons and not just because you know what, we just don't have anything—or we're going to disregard that case. We're going to

---

[2] The record does not disclose whether a particular judge had previously been designated to hear defendant's case. Judge Wolke advised the parties in a letter, dated October 20, 2006, that "[i]t appears that I have been assigned to hear [defendant's] case next week."

[3] Defendant's case was consolidated with that of her codefendant.

put some other case as priority. There were specific requests by the state for set-overs."

Defendant replied that, regardless of the reasons for the delay, the cumulative delay was unreasonable. The trial court denied defendant's motion, explaining that

"[t]here is no evidence other than perhaps a witness being unavailable that would have caused the state to move for continuance. So there is no specific cause or specific thing the state has done to be dilatory, or to put this in the posture that the court is going to be—not penalizing but taking into consideration a dilatory response. * * *

"There has obviously been at least one continuance based on the conflict between the judges. Now, the reason there is becoming conflicts—or there is current conflicts with judges, including myself potentially today, is that we have four new judges. There is no question about that.

"All of—at least three of these judges had practices beforehand. Mine is not the worst problem with conflicts since I wasn't representing criminal defendants before but had partners who do, and I have daily problems. I have to review these constantly.

"It would be impossible for the clerk to know all of the possible potential conflicts. In fact you have to go back to my private office's former adverse party list—or not even adverse party actually all conflict and all cases and have somebody who is willing to review those constantly on every case whether it be status, whether it be arraignments or otherwise to determine whether there is a conflict. It is impossible to know—usually impossible to know until a case is assigned.

"In this circumstance, no judge was assigned previously, so there would be no way of knowing until probably the week before, if not the day before whether there would be a requirement—whether there is going to be requirement to consider conflicts.

"I believe in this case it was a circumstance where Judge Wolke had represented both of these parties at one time; [codefendant] and [defendant] at one time. So that would be even a direct conflict, whereas mine was not even close to that. But those are reasons and I do find that those are justifiable reasons for the court to have to continue cases, and

as much as that may cause the case to sit, it's a justifiable reason.

"With—continuing the concept of four new judges, it also makes it problematical as to how the court can cycle those cases, how the clerk can bring them forward. *There is a substantial period of time I think we can attribute— although I'm not going to attribute the exact months. There is no way of knowing exact months. I can say it would include several months. Several to my way of thinking is anywhere from three to six, even eight months would be attributable to the state from the standpoint of budgetary concerns to the changeover.*

"* * * * *

"So we do have those issues. And those I would attribute and find that those contributed to the substantial number of the 26 months that the parties have stipulated to.

"* * * * *

"Given all of that, the Court's conclusion is the Court is not going to dismiss the case for lack of speedy trial. I recognize that might be an appealable issue, and this has been 26 months is getting out to the edge."

(Emphasis added.) Defendant was convicted after a trial to the court on stipulated facts. This appeal followed.

Defendant renews her argument on appeal, asserting that her statutory right to a speedy trial was violated by the 26 months of delay that were attributable to the state. In reviewing the trial court's ruling, we are bound by that court's findings if there is evidence in the record to support them. *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993).

ORS 135.747 provides that,

"[i]f a defendant charged with a crime, whose trial has not been postponed upon the application of the defendant or by the consent of the defendant, is not brought to trial within a reasonable period of time, the court shall order the accusatory instrument to be dismissed."

In turn, ORS 135.750 provides:

"If the defendant is not proceeded against or tried, as provided in ORS 135.745 and 135.747, and sufficient reason therefore is shown, the court may order the action to be continued and in the meantime may release the defendant

from custody as provided in ORS 135.230 to 135.290, for the appearance of the defendant to answer the charge or action."

We reiterated the pertinent test for determining whether a defendant's statutory speedy trial rights had been violated in *State v. Garcia/Jackson*, 207 Or App 438, 443-44, 142 P3d 501 (2000):

"ORS 135.747 and ORS 135.750, when read together, establish the following process for considering a motion to dismiss based on statutory speedy trial grounds. [*State v.*] *Johnson*, 339 Or 69, 87-91, 116 P3d 879 (2005)]; [*State v.*] *Davids*, 339 Or [96,] 101, [116 P3d 894 (2005)]. First, under ORS 135.747, the court must determine the total amount of delay and subtract from that total any periods of delay that the defendant requested or consented to. *Id.* Then, if the state has taken longer than ordinarily expected to bring the defendant to trial, and again applying ORS 135.747, the court must determine if the length of the remaining delay was unreasonable by examining 'all the attendant circumstances.' *Johnson*, 339 Or at 88. The attendant circumstances include '[c]ircumstances that cause delay (that is, the reasons for delay),' and an assessment of those circumstances generally will drive the determination of whether the delay was reasonable. *Id.* Finally, even if the court has determined that the delay was unreasonable, under ORS 135.750, the court may still allow the case to proceed, but only if the state shows sufficient reason not to dismiss the accusatory instrument. *Id.* at 81 n 9, 90."

The parties' stipulation in this case is conclusive of the first determination; that is, the total amount of delay that defendant neither requested nor consented to. As noted, the parties stipulated that 26 out of the 40 months of cumulative delay in the case were attributable to the state. The next step is to evaluate the length of that cumulative delay to determine if it is "longer than ordinarily expected to bring the defendant to trial." *Garcia/Jackson*, 207 Or App at 444.

The determination of whether a delay is reasonable in light of the attendant circumstances "requires courts to weigh several factors, including the reasons for the delay, the length of the total delay attributable to the state, and the length of any portion of the delay that was unjustified." *State v. Myers*, 225 Or App 666, 674, 202 P3d 238, *rev den*, 346 Or 184 (2009). Moreover, "the acceptability of the total delay in a

case is influenced by the extent to which it is justified. The longer the total delay is, the shorter any unjustified portion may be." *Id.* at 677. At some point, however, even if the discrete periods of delay in the prosecution of a case are justified, the cumulative length of the delay becomes unreasonable. *State v. Adams*, 339 Or 104, 111-12, 116 P3d 898 (2005). As we explained in *Myers*,

> "[v]iewed together, the [speedy trial cases] illustrate that the acceptability of the total delay in a case is influenced by the extent to which it is justified. *The longer the total delay is, the shorter any unjustified portion may be.* To recapitulate: [*State v.*] *Peterson*, [183 Or App 571, 53 P3d 455 (2002),] involved a substantial unexplained delay (six months) but a relatively short total delay (seven months). *Garcia / Jackson* involved a longer total delay (14 months), but the unjustified portion of it was relatively short (2.5 months); thus, despite the longer total delay, the period of time in which the defendant was brought to trial was still reasonable. In [*State v.*] *Allen*, [205 Or App 219, 134 P3d 976 (2006)], both the total delay and the unjustified portion of it were, in one factual scenario, a month longer than in *Garcia / Jackson* (15 months and 3.5 months, respectively), which tipped the balance against reasonableness. In [*State v.*] *Spicer*, [222 Or App 215, 193 P3d 62 (2008)] both the total delay (17 months) and the unjustified portion of it (nearly 9 months) were longer still, again leading to the conclusion that the total delay was unreasonable. Finally, in *Adams*, no unjustified delay was identified, but the long total delay (23 months) nevertheless led to the conclusion that the defendant was not brought to trial within a reasonable period of time."

225 Or App at 677 (emphasis added). Both the reason for a delay and how that reason justifies the length of the delay must be established in the record. *State v. Andrews*, 226 Or App 503, 512, 204 P3d 140 (2009). Because it is the state's obligation to bring a defendant to trial within a reasonable time, it is the state's burden to show the reasonableness of any delay based on those factors. *State v. Allen*, 234 Or App 243, 255, 227 P3d 219 (2010). "Where the state fails to show, on the record, justified reasons for a delay, the delay is deemed to be unreasonable." *State v. Davis*, 236 Or App 99, 110, 237 P3d 835 (2010).

■ From the evidence in the record in this case, set out above, we conclude that the state has failed to demonstrate that the 26 months of cumulative delay attributable to it was reasonable. Although the state did offer some reasons for some of the delay attributable to it—that a witness had been unavailable, and that there had been a shortage of judges available to hear the case—the state made no effort to link those reasons to discrete portions of the delay or to explain how those reasons justified the particular length of the delays that occurred. And, as the trial court explained, "[t]here is a substantial period of time I think we can attribute—although *I'm not going to attribute the exact months. There is no way of knowing exact months.*" (Emphasis added.)

The record in this case is similar in some respects to the record in *Davis*. As we explained in that case,

> "[t]he record fails to show any justification for the 15-month delay attributable to the state. The state presented no evidence to explain the setovers of the trial dates or the lengths of those delays. The trial court made no findings on the contents of its files or the administrative context of the delays. The prosecution argued below only that the delay resulted from the coupling of defendant's felony and misdemeanor cases, and defendant's opposition to their consolidation. The two cases, however, involve different crimes and unrelated facts. The state does not explain the rationale for linking the scheduling of conferences and trials in both cases. In the absence of any explanation, the state failed to show that any delay attributable to tracking both cases together was reasonable."

236 Or App at 110. Likewise, in this case, the state has failed to explain what particular periods of delay were attributable to a lack of judges or witness unavailability and has offered no explanation for how those circumstances necessitated the length of the delays that occurred. As *Myers* instructs, both the justification for a delay and the justification of the length of that delay must be reasonable, and, before such a determination can be made, those justifications must be adduced on the record.

Unlike in *Davis*, however, the record in this case does contain *some* evidence regarding *some* portions of the

cumulative delay attributable to the state. The trial court took judicial notice of its file and of the OJIN[4] record of the case and, although the court made no particular findings at the hearing on the motion to dismiss, those documents are part of the evidentiary record on review.

From our review of the materials that the court judicially noticed, we discern that there were three discrete periods of delay that were associated with a conflict on the part of an assigned judge or because of a more general lack of available judges. First, according to a docket entry, because no judges were available to hear the case on October 14, 2004, the case was set over to February 8, 2005, a delay of approximately 3.5 months. Second, again according to a docket entry, there were no judges available to hear the case on May 25, 2005, and the case was set over to November 3, 2005, a delay of approximately 5.25 months. Third, the case was set over from October 24, 2006 to February 21, 2007, because of Judge Wolke's conflict, a delay of approximately four months. Altogether, our review of the record reveals approximately 12.75 months of cumulative delay in those three periods that could potentially be attributed to a lack of available judges.

However, the record is insufficient to support a conclusion that those three periods of delay were reasonable. *State v. Lee*, 234 Or App 383, 390-92, 228 P3d 609, *rev den*, 348 Or 523 (2010), illustrates the kinds of evidence that are helpful to assess the reasonableness of delays that are attributed to a lack of available judges. In *Lee*, the parties appeared at a pretrial docket call on May 10, 2006, and the state requested a reset to May 16 to accommodate an out-of-state witness. *Id.* at 385. However, because "[o]ne judge already had a primary trial set for that date, another had been screened from [the] defendant's case, the third had show-cause hearings scheduled for that date, and the fourth had a doctor's appointment," the case was rescheduled for September 6, 2006. *Id.* As that date approached, the state again requested that the case be reset because of the out-of-state witness, unless the case was scheduled as the primary trial on September 6, 2006. However, on that date "one judge had scheduled a priority case with an in-custody defendant,

---

[4] Oregon Judicial Information Network.

the second remained screened from presiding over [the] defendant's case, the third judge was on vacation, and the fourth judge was scheduled to manage arraignments." *Id.* at 386. Accordingly, the case was scheduled for the next available trial date, March 20, 2007. *Id.*

We concluded that those two discrete periods of delay were reasonable, and explained that our conclusion was grounded in the evidence regarding the reasons for those delays:

> "At the May 10 docket call, this case could not be scheduled as the primary trial before any judge on May 16 because one judge was screened from the case, one had show-cause hearings scheduled, a third had a doctor's appointment, and a fourth already had a primary trial scheduled. It is true that the case could have been scheduled as a back-up trial in case the fourth judge's primary trial did not go forward, but as noted, the state preferred not to cause inconvenience to the out-of-state child witness by requiring her to travel to Oregon when the probability that the case could actually be tried on that date was so uncertain. Given the evidence in the record about the availability of judges, we conclude that the delay from May 16 through September 6, 2006, the next scheduled trial date, was reasonable."

*Id.* at 389-90 (footnote omitted). We also held that "[e]ssentially the same set of circumstances surrounded the second postponement of the trial," from September 6, 2006 to March 20, 2007, including testimony from the docketing clerk that "she determined the next available date for a two-day trial [by] consulting both the judges' and the attorneys' schedules." *Id.* at 390. After setting out those facts, we observed that, "[i]n this case, the reasons for each portion of the delay are well-established in the record. Moreover, as explained above, each portion of the delay, by itself, was reasonable." *Id.* Accordingly, we held that, "in light of the reasons for the delay, as established by the record in this case, the trial court correctly concluded that the delay in this case was not unreasonable for purposes of ORS 135.747." *Id.* at 392.

By contrast, the record here does not contain the particularized kinds of evidence that we relied upon in *Lee*.

The evidence that we have identified—the OJIN record and the trial court file—does not disclose how the particular length of each of the three periods of delay was required by a lack of available judges or whether the court or the state had made a reasonable effort to reset the case for an earlier trial date. Accordingly, although 12.75 months of the cumulative delay in this case is partially explained, the posited justifications for that period of delay are insufficient to permit the court to conclude that the overall period of delay was reasonable or that any of the three discrete portions of that period of delay was reasonable.

There remain 13.25 months of the total cumulative delay of 26 months for which there is no explanation in the record.[5] Accordingly, we conclude that those 13.25 months of unexplained delay also were unreasonable. *Davis*, 236 Or App at 110 ("Where the state fails to show, on the record, justified reasons for a delay, the delay is deemed to be unreasonable.").

It follows that the entire cumulative delay of 26 months that was attributable to the state was unreasonable. Because the state failed to show that the cumulative delay was reasonable, we also conclude that there was not sufficient reason for the court to have continued the case under ORS 135.750. It follows that the trial court erred in denying defendant's motion to dismiss.

Reversed.

---

[5] Although the prosecutor represented to the trial court that some portion of the delay was attributable to a witness being unavailable, and defendant did not challenge the prosecutor on that point, the prosecutor did not associate that justification with any particular portion of the cumulative delay. Accordingly, we need not consider whether the representation of the prosecutor regarding the justification for a delay at a hearing on a motion to dismiss under ORS 135.747 carried the force of evidence in this case.