Argued and submitted February 21, 2013, reversed and remanded for entry of
judgment of dismissal May 29, 2014

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## STEPHEN ERIC STRAUGHAN,
*Defendant-Appellant.*

Crook County Circuit Court
MI080265; A147718

327 P3d 1172

Anne Fujita Munsey, Senior Deputy Public Defender, argued the cause for appellant. With her on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Karla H. Ferrall, Assistant Attorney General, argued the cause for respondent. With her on the brief were John R. Kroger, Attorney General, and Anna M. Joyce, Solicitor General.

Before Ortega, Presiding Judge, and Sercombe, Judge, and De Muniz, Senior Judge.

SERCOMBE, J.

**SERCOMBE, J.**

Following a bench trial, the trial court imposed a punitive contempt sanction. ORS 33.065. Defendant appeals, assigning error to the trial court's denial of his motion to dismiss for lack of a speedy trial under *former* ORS 135.747 (2011), *repealed by* Or Laws 2013, ch 431, § 1. On review for errors of law, *State v. Johnson*, 339 Or 69, 82-87, 116 P3d 879 (2005), we reverse and remand for entry of a judgment of dismissal.

Because this case proceeded to trial along with three misdemeanor cases brought against defendant—one of which is the subject of another appeal we decide today in *State v. Straughan (A148221)*, 263 Or App 242, 328 P3d 737 (2014)—we set out the pertinent facts that relate to those cases. On March 22, 2008, police were called to a fight outside a tavern involving defendant and at least three alleged victims. One of those alleged victims told the police that, in 2007, defendant had a fight with the victim's mother, C, and had injured the mother's hand. Defendant was arrested that night, and he signed a security release agreement that he would have no contact with C.

On April 4, 2008, in case MI080193, defendant was charged by information with one count of assault in the fourth degree. In that case, defendant's security release agreement was modified to allow third-party contact for the purpose of discussing defendant and C's jointly owned business. On April 21, 2008, defendant wrote a letter to C discussing their business; she received the letter a few days later.

On May 6, 2008, in case MI080237, defendant was charged by information with two counts of fourth-degree assault and two counts of harassment relating to the 2007 incident with C. On May 20, 2008, in case MI080265, defendant was charged with one count of contempt of court for violating the security release agreement. On June 17, 2008, at a status hearing, defendant indicated that he would be filing a motion to consolidate all three pending cases. On June 25, 2008, however, defendant filed a motion to consolidate cases MI080193 and MI080237, but no motion to

consolidate appears in the contempt case.[1] The trial court granted that motion, but soon after, on August 15, 2008, the court granted the state's motion to dismiss the charge in MI080193. Thus, as of that date, the two remaining cases—this case for contempt (MI080265) and the case for fourth-degree assault and harassment (MI080237)—were proceeding separately. At an August 15, 2008, status hearing, the contempt case was set for trial on August 21, 2008. Defendant requested a setover of that trial date, and a status hearing was set for November 4, 2008.

Before that hearing, however, two new cases were filed. On August 28, 2008, in case MI080446, defendant was charged by information with driving under the influence of intoxicants (DUII) in relation to an arrest earlier that month. On September 23, 2008, in a separate case (MI080489), defendant was charged by information with two counts of menacing and one count of harassment. Those charges stemmed from the fight on March 22, 2008.

By the time of the November 4, 2008, status hearing, then, there were four cases pending against defendant in Crook County Circuit Court: one case related to the 2007 incident (MI080237, "the assault case"); one case related to the 2008 fight (MI080489, "the menacing case"); this case for contempt (MI080265); and the DUII case (MI080446). At the hearing, defense counsel stated that "[w]e are here just to get a trial date." The court asked defense counsel which of three cases—the contempt case, the menacing case, or the DUII case—was "primary for trial," and defense counsel responded that she would leave that decision to the district attorney. The district attorney noted that the assault case was already set for trial in December 2008 and stated that, after that case, the state would try the menacing case. The trial court scheduled the menacing case for trial in January 2009 and ordered that the contempt and DUII

---

[1] For the June 17, 2008, status hearing, the Oregon Judicial Information Network (OJIN) register in the contempt case states, "[defense counsel] to file motion to consolidate cases MI080193, MI080237, and MI080265." The June 25, 2008, motion to consolidate is not in the record, but the OJIN register for the contempt case shows that that motion was not filed in that case. The OJIN registers for the other cases (MI080193 and MI080237) both show that those cases were consolidated with each other but not with the contempt case.

cases would begin to track with the menacing case until it was "resolved."[2]

In this case, a status hearing was set for December 23, 2008, but the case was set over twice at the state's request because witnesses were unavailable to testify in the menacing case. First, this case was set over on December 23, 2008, because one of the three alleged victims in the menacing case was out of state and not available to testify. Second, the case was set over on April 30, 2009, because an officer, who was a witness in the menacing case, was in training and not available to testify.

The next status hearing, scheduled for July 16, 2009, was set over at defendant's request. A status hearing was set for November 25, 2009, but, just before that hearing, defendant filed a motion to schedule a settlement conference in all of defendant's pending cases: this case, the menacing case, the assault case, and the DUII case. The settlement conference was set for February 4, 2010.

Two days before that scheduled settlement conference, defendant's counsel moved to withdraw, stating in a supporting affidavit that defendant had "contacted [counsel's] office and explained that he did not need [her] services anymore." Defendant appeared in court on February 4, 2010, and the trial court appointed new counsel. The trial court set a pretrial conference for March 24, 2010.

At the March 24, 2010, pretrial conference, defendant's new counsel indicated that he would file a motion to consolidate the contempt case with the menacing and assault cases. The trial court scheduled a two-day trial for all three cases to start July 19, 2010. On April 1, 2010, defendant moved to consolidate the contempt case, the menacing case, and the assault case for the scheduled trial date, and the trial court ordered consolidation soon after. The DUII case was separately set for a May 19, 2010, trial.

On April 22, 2010, the state filed a motion to schedule a settlement conference in all four of defendant's pending cases: the three now-consolidated cases set for trial and the

---

[2] The trial on the assault case was set over by the court, and the assault case later began to track the menacing case.

DUII case. The conference was originally scheduled for July 15, 2010, but the conference was twice set over by the court. On September 10, 2010, the settlement conference was held, but the parties did not reach settlement. At a status check on September 20, 2010, trial in the DUII case was set for November 17, 2010, and trial in the consolidated cases was set for January 3, 2011.

On October 11, 2010, defendant filed a motion to dismiss the four pending cases for lack of speedy trial under *former* ORS 135.747. In the contempt case, defendant argued that, pursuant to *former* ORS 135.747, the 958-day delay between the date the information was filed on May 20, 2008, and his trial set for January 3, 2011, was unreasonable. Following a hearing, the trial court denied defendant's motion to dismiss on December 20, 2010:

> "This matter came before the Court on the Defense Motion to Dismiss for lack of speedy trial. The hearing was held on November 9, 2010. The cases are now set for a consolidated trial on January 3, 2011. The defendant was arraigned on his first case on May 12, 2008. Clearly the Court would like to see cases be handled quicker than this case. Because much of the delay is attributed to the defendant (a total of four cases pending, two different attorneys), or attributable to both the state and the defendant (initially a defense request for a settlement conference and then when new counsel was appointed a request for a settlement conference was made by the state), the Court will deny the Defendant's request for dismissal."[3]

A two-day trial began on January 3, 2011, in the three consolidated cases. After defendant renewed his motion to dismiss and the court again denied that motion, the menacing and assault cases were tried to a jury, and the contempt case was tried to the court during a break in the jury trial on January 4, 2011. The court found defendant in contempt of court and imposed a fine and assorted fees totaling $227. The jury returned a verdict of not guilty on

---

[3] After the settlement conference, the DUII case proceeded to trial independently of the three consolidated cases. The court set the DUII case for a status check on November 16, 2010, on "back-up trial." On that date, the court set over the scheduled November 17, 2010, trial because the DUII case had been "bumped." Trial was then set for February 8, 2011, and, after trial on that date, the jury returned a verdict of guilty on the DUII charge.

the charges for harassment, menacing, and assault in the fourth degree.

On appeal, defendant argues that the trial court erred in concluding that the delay between the information and the trial on the contempt charge did not violate the speedy trial requirements of *former* ORS 135.747. An accusatory instrument must be dismissed under that statute "[i]f a defendant charged with a crime, whose trial has not been postponed upon the application of the defendant or by the consent of the defendant, is not brought to trial within a reasonable period of time[.]"[4] At the outset, we note that the repeal of *former* ORS 135.747 applies to "all criminal proceedings, regardless of whether the case is pending on or the prosecution was initiated before April 1, 2014." Or Laws 2013, ch 431, § 4. The text of that provision—specifically the use of the term "criminal proceedings"—raises the question of whether the repeal affects appeals, like this one, where the defendant's motion to dismiss under *former* ORS 135.747 was denied, the defendant appealed, but the case was pending on appeal on April 1, 2014. In other words, is this appeal a part of a "criminal proceeding," as that term is used in the repeal provision? To answer that question, we must ascertain the intent of the legislature as evidenced by the text of the repeal provision in context, along with any legislative history that is useful to our analysis. *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009).

The text of the provision does not define the term "criminal proceeding." Black's Law Dictionary defines "proceeding" as:

---

[4] As noted, *former* ORS 135.747 allowed dismissal of an "accusatory instrument" in certain circumstances when "a defendant is charged with a crime." We have concluded that contempt is not a "crime" so that contempt proceedings do not result in a "conviction." *See State v. Coughlin*, 258 Or App 882, 888, 311 P3d 988 (2013) (contempt determination is not a "conviction" for purposes of ORS 137.225(6)(b)); *State v. Reynolds*, 239 Or App 313, 316, 243 P3d 496 (2010) (entry of criminal conviction improper after finding the defendant in contempt of court). Defendant argues, and the state does not dispute, that *former* ORS 135.747 applied to punitive contempt proceedings under ORS 33.065(5) ("Except as otherwise provided by this section, the accusatory instrument is subject to the same requirements and laws applicable to an accusatory instrument in a criminal proceeding, and all proceedings on the accusatory instrument shall be in the manner prescribed for criminal proceedings."). We assume, for purposes of this opinion, that defendant is correct and *former* ORS 135.747 applied to the dismissal of an information that initiated punitive contempt proceedings.

"**1.** The regular and orderly progression of a lawsuit, including all acts and events between the time of commencement and the entry of judgment. **2.** Any procedural means for seeking redress from a tribunal or agency. **3.** An act or step that is part of a larger action. **4.** The business conducted by a court or other official body; a hearing."

*Black's Law Dictionary* 1324 (9th ed 2009). Although some of those definitions are broad enough to include an appeal, the definition of "criminal proceeding" in that same dictionary appears not to extend to criminal appeals. *See id.* (defining "criminal proceeding" as "[a] proceeding instituted to determine a person's guilt or innocence or to set a convicted person's punishment; a criminal hearing or trial").[5]

A definition of "criminal proceeding" is also found at ORS 131.005(7), among the preliminary provisions in the 1973 Criminal Procedure Code. Although directly applicable only to the criminal procedure code, that definition, as well as its judicial construction, provide relevant context to the repeal provision. *See Filipetti v. Dept. of Fish and Wildlife*, 224 Or App 122, 128, 197 P3d 535 (2008) ("Context includes other provisions of the same statute and other related statutes, as well as relevant judicial constructions of those statutes." (Internal quotation marks omitted.)). In ORS 131.005(7), a "criminal proceeding" is defined as "any proceeding which constitutes a part of a criminal action or occurs in court in connection with prospective, pending or completed criminal action." *See also* ORS 131.005(6) (defining "criminal action"

---

[5] Earlier versions of that dictionary provide definitions of "criminal proceeding" that are similarly limited. For example, this court has cited *Black's Law Dictionary* 448-49 (4th ed 1951), which defines "criminal proceeding" as

"[o]ne instituted and conducted for the purpose either of preventing the commission of crime, or for fixing the guilt of a crime already committed and punishing the offender; as distinguished from a 'civil' proceeding, which is for the redress of a private injury. *** Strictly, a 'criminal proceeding' means some step taken before a court against some person or persons charged with some violation of the criminal law."

*See State v. Thompson*, 166 Or App 370, 374, 998 P2d 762, *rev den*, 331 Or 192 (2000) (construing the term "criminal proceeding" in the aggravated murder statute, ORS 163.095); *see also DeYoung/Thomas v. Board of Parole*, 332 Or 266, 282, 27 P3d 110 (2001) (relying on a similar definition of "criminal proceeding" in *Black's Law Dictionary* 374 (6th ed 1990) in construing the terms "civil action or proceeding" in ORS 20.190).

as "an action at law by means of which a person is accused of the commission of a violation, misdemeanor or felony"). Appellate cases considering the definitions in ORS 131.005 have recognized that a criminal proceeding is broader than a criminal action, though they have not held that an appeal from a judgment of conviction (much less an appeal from the imposition of a contempt sanction) falls within the definition of "criminal proceeding."[6]

In any event, there is no indication in the text or legislative history of the repeal provision that the legislature intended to adopt the definition of "criminal proceeding" in ORS 131.005(7) over the more limited dictionary definition of "criminal proceeding" that we have cited above. In other words, we encounter a range of definitions but cannot discern which of those definitions the legislature had in mind when it enacted the repeal provision.

More generally, the legislative history of the repeal provision does not clarify its intended reach. Toward the end of the 2013 legislative session, the repeal provision was proposed to "maintain the status quo" until a working group could adopt modifications to the speedy trial statutes in the next legislative session. Audio Recording, Senate Committee on Judiciary, HB 2962A, May 30, 2013, at 8:47:07 (statement of Sen Floyd Prozanski), https://olis.leg.state.or.us

---

[6] In *State v. Meyers*, 153 Or App 551, 556, 958 P2d 187 (1998), we considered whether a change to an evidentiary rule, which applied "to all criminal actions pending" on a certain date, applied to an appeal pending on that date. Contrasting the terms "criminal proceeding" and "criminal action" in ORS 131.005, we reasoned that "the definitional provisions suggest that a 'criminal action' is defined more narrowly to mean a criminal trial, and a 'criminal proceeding' more broadly to include proceedings that occur in connection with a criminal trial." *Id.* at 557. Ultimately, we concluded that the legislature intended the new law to apply to criminal trials, but not criminal appeals, pending on the law's application date, because a criminal action was commonly understood as roughly equivalent to a criminal trial and because that construction avoided serious questions of due process raised by changing the rules of evidence retroactively. *Id.* at 558-60.

In *State ex rel Roby v. Mason*, 284 Or 427, 429, 587 P2d 94 (1978), the Supreme Court concluded that, because "an appeal in an extradition case is a proceeding in a court in connection with a criminal action," it was a "criminal proceeding" under ORS 131.005(7). Unlike defendant in this case, however, the petitioner was not appealing a judgment of conviction; the petitioner in that case appealed a trial court's denial of an application for writ of habeas corpus that sought to test the validity of an arrest for extradition to another state.

(accessed May 1, 2014).[7] From that arrangement, we can infer that the legislature intended that some form of speedy trial provision remain in effect until a new statute was in place. That inference, in turn, suggests that the legislature did not intend the repeal provision to effectively create a gap in coverage for those defendants who had appealed a denial of their motion to dismiss under *former* ORS 135.747, but who had not received resolution of their appeal before April 1, 2014. But that view of the legislative history—based on one inference built on another—is too general and speculative to resolve the ambiguity in the statutory text.

Because the statutory text and legislative history fail to provide a clear indication of the legislature's intentions, we turn to general maxims of statutory construction. *Gaines*, 346 Or at 172. Among them is the "axiomatic" proposition "that we should construe and interpret statutes 'in such a manner as to avoid any serious constitutional problems.'" *Bernstein Bros. v. Dept. of Rev.*, 294 Or 614, 621, 661 P2d 537 (1983) (quoting *Easton v. Hurita*, 290 Or 689, 694, 625 P2d 1290 (1981)). For example, in *State v. Meyers*, 153 Or App 551, 958 P2d 187 (1998), we concluded that, where a change to an evidentiary rule applied "to all criminal actions pending," applying the new evidentiary rule after the trial court already had ruled on evidentiary issues would "mov[e] the proverbial goal posts after the contest is over" and therefore raise "serious questions of due process." *Id.* at 556, 559-60. Those same concerns are present here. Application of the repeal provision to this appeal would deprive criminal defendants of an ability to correct erroneous trial court rulings under *former* ORS 135.747, effectively transforming those rulings into correct rulings. As in *Meyers*, that result would raise "serious questions of due process," and we therefore choose an interpretation that does not present that serious constitutional difficulty. 153 Or App at 560.[8] Accordingly,

---

[7] As promised, in 2014, the working group came forward with proposed legislation specifying new time limits within which trial must commence on criminal charges. Soon after, the legislature passed Senate Bill 1550, which sets forth new speedy trial requirements that "apply to proceedings in which a motion for dismissal * * * is filed on or after April 1, 2014." Or Laws 2014, ch 73, § 4.

[8] We note that, in a similar case, where defendant filed a motion to dismiss under *former* ORS 135.747 and his appeal was pending on April 1, 2014, *State v. Brown*, 263 Or App 263, 328 P3d 699 (2014), the defendant and the state agreed

we conclude that the repeal provision applicable to "criminal proceedings" does not apply to this appeal, and we therefore apply *former* ORS 135.747 in our review.

Our analysis under that statute proceeds in two steps. "First, we must determine the relevant amount of delay by subtracting from the total delay any periods of delay that defendant requested or consented to." *State v. Glushko/Little*, 351 Or 297, 305, 266 P3d 50 (2011). For purposes of *former* ORS 135.747, "a defendant gives 'consent' to a delay only when the defendant expressly agrees to a postponement requested by the state or the court." *Id.* at 315. Second, if the remaining period of delay is longer than to be expected to bring a defendant to trial, we must determine whether that delay is reasonable. *Id.* at 305; *Johnson*, 339 Or at 88. Finally, under a separate statute, ORS 135.750 (2011), *amended by* Or Laws 2013, ch 431, § 2, the trial court may exercise its discretion to allow the case to proceed if the state shows "sufficient reason" not to dismiss the accusatory instrument. *Johnson*, 339 Or at 90-91.

Our initial inquiry, then, is whether any part of the 959-day delay in this case is the result of defendant's request for a postponement or his consent to a postponement. Defendant concedes that he requested a delay totaling 207 days when he twice asked the court to postpone the proceedings: (1) from the initial trial date of August 21, 2008, to the pretrial conference on November 4, 2008, for a delay of 75 days; and (2) from the status hearing on July 16, 2009, to the status hearing scheduled for November 25, 2009, for a delay of 132 days.

Beyond that, the state contends that defendant requested or consented to several other periods of delay. The state first argues that defendant requested or consented to a delay by filing a motion requesting a settlement conference. We agree. When a defendant files a motion requiring pretrial resolution, he applies for or consents to a postponement for a reasonable period of time for the trial court to

---

that this court should apply *former* ORS 135.747 on appeal to decide whether the trial court erred in denying the motion to dismiss. There, the state noted that "the legislature did not intend to 'move the proverbial goalposts' for cases already on appeal and transform erroneous rulings into correct ones."

consider and decide the motion. *Glushko/Little*, 351 Or at 313-14 (explaining that, under *State v. Crosby*, 217 Or 393, 342 P2d 831 (1959), and *State v. Robinson*, 217 Or 612, 343 P2d 886 (1959), a pretrial motion amounts to an application for a postponement for a reasonable period of time or to express consent to a reasonable delay for the court to decide the motion); *accord State v. McGee*, 255 Or App 460, 480, 297 P3d 531, *rev den*, 354 Or 389 (2013) (concluding that, "by filing a motion requiring pretrial delay, a defendant applies for or consents to delay for purposes of [*former*] ORS 135.747," but "application or consent is not for unlimited delay, only reasonable delay"). Similarly, where a defendant files a motion to schedule a settlement conference, that motion constitutes an application for or consent to a reasonable period of time for the court to rule on the motion and, if the motion is granted, for the conference to be scheduled on the court calendar. In this case, defendant does not contend, and we do not conclude, that the period of time between his request and the scheduled settlement conference was unreasonable. Accordingly, defendant consented to or applied for that 71-day delay.[9]

We likewise agree with the state that defendant consented to or applied for the 48-day delay between February 4, 2010—when defendant told his attorney that he did not want her to represent him, the attorney withdrew, and the court appointed new counsel—and March 24, 2010, the date of a pretrial conference with new counsel. By telling his counsel that he did not want her services, defendant applied for or consented to a reasonable period of time for the court to rule on counsel's motion to withdraw; for the court to appoint new counsel; and for the court to schedule a pretrial conference with new counsel. Further, the 48-day delay was a reasonable length of time for those events to occur.

We do not agree with the state, however, that, because defendant "request[ed] to track the contempt case with [the menacing case]," he consented to a 205-day delay—

---

[9] The state also argues that defendant consented to a 58-day delay, from July 15, 2010 to September 10, 2010, when the court twice rescheduled a separate settlement conference requested by the state. We disagree. The state, not defendant, requested that settlement conference, and defendant did not consent to the setovers requested by the court.

from December 23, 2008 to July 16, 2009—that resulted when the state twice requested setovers because witnesses were unavailable to testify in the menacing case. Defendant did not request that the contempt case track the menacing case; the trial court, without prompting from either party, ordered that this case track the menacing case. And when the court ordered the tracking, defendant did not consent to that order. Consent under *former* ORS 135.747 must be shown by defendant's express agreement to a postponement, not by his silence after the court issues an order. *See State v. Adams*, 339 Or 104, 109, 116 P3d 898 (2005) (explaining that a lack of objection "conveys no message that the defendant either joins in the motion or waives any rights that he has that are affected by the motion"). Defendant did not apply for or consent to the 205-day delay that resulted from two setover requests by the state.

Finally, we reject the state's related argument that defendant requested a 49-day delay from November 4, 2008, to the pretrial conference scheduled for December 23, 2008, because defendant's "request" that this case track the menacing case "required the cancellation of the November 4, 2008, hearing." As explained, defendant did not request or consent to the tracking. Beyond that, the November 4, 2008, hearing was not cancelled; a pretrial conference was held on that date.

In total, then, defendant consented to or requested 326 days of delay. We subtract that amount from the total delay of 959 days and now must determine whether the resulting delay of 633 days—approximately 21 months— is longer than what ordinarily would be expected to bring defendant to trial on the contempt charge, and, if so, whether that delay was reasonable. A defendant may be sanctioned for punitive contempt of court through the imposition of various penalties, including "[c]onfinement for not more than six months." ORS 33.105(2)(c). That sanction is analogous to the penalty allowed for misdemeanor crimes, "a maximum term of imprisonment of not more than one year." ORS 161.545. We apply, then, to contempt proceedings the expectation of reasonable delay otherwise applicable to misdemeanor criminal actions. Because a 21-month delay exceeds expectations for bringing a misdemeanor case

to trial, *State v. Garcia/Jackson*, 207 Or App 438, 446, 142 P3d 501 (2006), we turn to whether the delay was reasonable under "all the attendant circumstances." *Johnson*, 339 Or at 88. That inquiry requires us "to weigh several factors, including the reasons for the delay, the length of the total delay attributable to the state, and the length of any portion of the delay that was unjustified." *State v. Myers*, 225 Or App 666, 674, 202 P3d 238, *rev den*, 346 Or 184 (2009). Because it is the state's obligation to bring a defendant to trial within a reasonable time, it is the state's burden to show the reasonableness of any delay. *State v. Bellah*, 242 Or App 73, 80, 252 P3d 357 (2011).

Before addressing the individual periods of delay, we note that the total delay in this case comes close to the two-year statute of limitations for the contempt charge, a marker that the Supreme Court has described as "some indication of what the legislature views as the outer limit of reasonableness for proceeding against a defendant for a given crime." *Adams*, 339 Or at 112. In *Adams*, the court reasoned that, "[a]t some point, the focus must shift away from whether the various postponement requests and decisions *individually* are justifiable to whether the overall period of time to bring the defendant to trial is 'reasonable' *in toto*." *Id.* at 111-12 (emphasis in original). Thus, although the total delay of 23 months in *Adams* was justified by a lack of judicial resources, the court concluded that "a delay that roughly equals the statute of limitations for the crime at issue is too long." *Id.* at 112. Even apart from cases like *Adams* where the total delay is so long that it is unreasonable regardless of an assessment of individual periods of delay,[10] the length of the total delay is important as we assess individual periods of delay. Generally, "the acceptability of the total delay in a case is influenced by the extent to which it is justified. The

[10] In this case, we need not decide whether a delay of 633 days, or just over 21 months, is "roughly equal" to the statute of limitations and therefore unreasonable without regard to whether individual periods of delay were justified. *Compare Garcia/Jackson*, 207 Or App at 451 (concluding that delay of 670 days, or over 22 months, was unreasonable, regardless of whether individual delays were justified, because that period was roughly equal to the two-year statute of limitations), *with State v. Lee*, 234 Or App 383, 391, 228 P3d 609, *rev den*, 348 Or 523 (2010) (reasoning that a delay of 17.5 months would not "roughly equal" a two-year statute of limitations, but concluding that, in any event, the relevant limitations period was four years).

longer the total delay is, the shorter any unjustified portion may be." *Myers*, 225 Or App at 677.

We begin with the longest period of delay in this case, the delay of 205 days—or just under seven months—caused when the state requested two setovers because two witnesses in the menacing case were not available to testify in that case. Generally, we have recognized that the unavailability of witnesses is a sound reason for a delay. For example, we have concluded that a delay of less than two months caused by the unavailability of a witness "was reasonable because it was 'the product of the type of scheduling issues that courts and litigants face regularly—delays due to scheduling conflicts by the court and counsel, the unavailability of witnesses[.]'" *State v. Peterson*, 252 Or App 424, 430, 287 P3d 1243 (2012) (quoting *State v. Allen*, 205 Or App 219, 228, 134 P3d 976 (2006)).

What the state fails to explain, however, is why it was reasonable to delay the *contempt* case because witnesses were unavailable in the *menacing* case. In other words, the state has not explained why it was necessary—or even beneficial—for the contempt case to track the menacing case, so that the contempt trial could not go forward until the menacing case was resolved. As noted, defendant did not request or consent to track the contempt case with the menacing case. Neither witness who was unavailable to testify in the menacing case was needed to testify in this case. And the state has not otherwise pointed to any reason why the contempt case was linked to the menacing case. Even if there were common witnesses to the contempt case and the menacing case, when the court ordered the tracking, the contempt and menacing cases were set for separate trials. Moreover, although the contempt case was consolidated with the menacing and harassment cases approximately 17 months after the tracking order, the contempt case was tried to the court separately from those two jury trial cases.

Ultimately, "where the state fails to show, on the record, that there was 'good reason' for a delay, the delay is deemed unreasonable." *State v. Allen*, 234 Or App 243, 255, 227 P3d 219 (2010). Because the state has not offered any explanation why this case was tracking the menacing case,

we conclude that the unavailability of witnesses in the menacing case did not justify the six-month delay in this case and was therefore unreasonable. *Cf. State v. Davis*, 236 Or App 99, 110, 237 P3d 835 (2010) (rejecting the state's argument that a delay was reasonable because it "resulted from the coupling of [the] defendant's felony and misdemeanor cases, and [the] defendant's opposition to their consolidation," where the state did "not explain the rationale for linking the scheduling of conferences and trials in both cases").

Even if we assume that all other periods of delay were reasonable, we are left with a substantial total delay of 21 months, with a significant period—nearly seven months, or almost a third of the total delay—that is not justified. Although we have not identified a precise point at which a period of unjustified delay renders the total delay unreasonable, we have held, in a misdemeanor case, that a total delay of 19 months was unreasonable under *former* ORS 135.747 where a five-month portion of that delay was due to a scheduling error that neither the court nor the state could satisfactorily explain. *See Peterson*, 252 Or App at 430, 434. In *Peterson*, we explained that no appellate decision had "upheld the denial of a motion to dismiss under [*former*] ORS 135.747 in a misdemeanor case where, as here, the cumulative period of delay attributable to the state exceeded 15 months and where a significant part of the delay was determined to be unreasonable." *Id.* at 433; *compare State v. Hawkins*, 261 Or App 440, 447, 323 P3d 463 (2014) (holding that 22-month delay, where approximately five months of the delay were unexplained or unjustified, was not unreasonable in prosecution of felonies subject to three-year statute of limitations). Ultimately, we concluded that, even though "there was a continuing dialogue between the [trial] court and the parties—including numerous scheduling and status conferences," the total delay of 19 months was unreasonable, where five months of that delay were unjustified. *Peterson*, 252 Or App 433-34.

The same is true here, where the length of total unconsented delay and the length of unjustified delay in this case were both longer than in *Peterson*. The total delay of 21 months in bringing defendant's contempt charge to trial, which includes a significant unjustified delay of nearly

seven months, was unreasonable under *former* ORS 135.747. Although the trial court may allow the case to proceed if the state shows "sufficient reason" not to dismiss the information under ORS 135.750 (2011), the state did not make that showing here, where the state failed to show that the total unconsented delay was reasonable, and the state did not independently argue that there was "sufficient reason" for the trial court to continue the case. *See Bellah*, 242 Or App at 84 ("Because the state failed to show that the cumulative delay was reasonable, we also conclude that there was not sufficient reason for the court to have continued the case under ORS 135.750 [(2011)]."). Accordingly, we reverse and remand for entry of judgment of dismissal.

Reversed and remanded for entry of judgment of dismissal.